**LIBERTY MUTUAL INSURANCE CO.,**
Appellant (Defendant Below),

v.

**Wayne L. BLAKESLEY, Appellee**
(Plaintiff Below).

No. 43A04–9002–CV–66.[1]

Court of Appeals of Indiana,
Third District.

March 27, 1991.

---

**1.** This case was reassigned to this office on January 2, 1991.

Joseph M. Forte, Edward N. Kalamaros & Associates Professional Corp., South Bend, for appellant.

John D. Ulmer, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for appellee.

STATON, Judge.

Liberty Mutual appeals from a judgment in favor of Wayne Blakesley in the amount of $84,447.00 plus interest. Liberty presents six issues for our review:

I.   Did the trial court err in refusing to grant Liberty's Second Motion for Summary Judgment and refusing to strike Blakesley's affidavit?

II.  Did the trial court err in permitting Blakesley to testify concerning conversations with Liberty employees?

III. Did the trial court err in denying Liberty's Motion for Judgment on the Evidence or for a New Trial?

IV.  Did the trial court err in giving Final Instruction No. 6?

V.   Did the trial court err in refusing to give Liberty's tendered Instructions 5 and 7?

VI.  Did the trial court err in excluding testimony from Blakesley's prior attorney?

We reverse and remand for a new trial.

In 1981, Blakesley purchased a multi-peril insurance policy from Liberty to cover an apartment building he owned. The policy was to be in effect until October 1, 1984. In 1983, Blakesley informed Liberty that the State Bank of Syracuse was a mortgagee and the policy and company records were changed to reflect the mortgagee's interest in the property. Blakesley sold the apartment building to Michael Buss on or about June 2, 1984. Buss assumed the note and mortgage to the Syracuse bank, Blakesley remaining liable on them. Buss also executed a note and second mortgage on the property in favor of Blakesley.

Blakesley informed Liberty by letter on June 5, 1984, that he had sold the property and wanted to assign the remaining term of the policy to Buss. Liberty would not agree to the assignment of the policy and notified Blakesley sometime in June that his policy would be cancelled and a new one would be written for Buss. Blakesley subsequently received the following letter, dated August 31, 1984:

Mr. Blakesley,

I am writing to confirm the cancellation of the above listed policy per your letter which I received June 5, 1984. I understand you wanted us to assign the policy to Mr. Buss, however, we were unable to do so. We were also unable to get in touch with him until recently and so that there will be no lapse in coverage, the effective date of cancellation is 9/1/84. Any refund due you will be sent directly to you. You can then work out the details with Mr. Buss.

　　　　Sincerely,
　　　　Paula A. Ferree
　　　　Business Sales Assistant

Record, p. 545.

In the meantime, a small fire occurred at the apartment building on August 25, 1984, and another one occurred on September 8, 1984. Neither of these fires were reported to Liberty. On September 28, 1984, another fire occurred which did a substantial amount of damage to the property. Liberty was notified of this fire by Buss; how-

ever, because a new policy had never been written for Buss, Liberty denied coverage.

Blakesley filed suit against Liberty, alleging negligence, breach of contract, promissory estoppel, and constructive fraud. He sought compensatory and punitive damages. The trial court granted summary judgment as to all counts and Blakesley appealed.

In a Memorandum Decision dated May 26, 1988, we affirmed the grant of summary judgment on all issues except that of negligence. The relevant portion of the decision provided:

"Blakesley first raises the issue whether the trial court erroneously granted summary judgment in favor of Liberty on the negligence claim. In his complaint, Blakesley alleges that Liberty promised him that in the transfer or effectuation of insurance to Buss, there would be no lapse in coverage on the property. An insurance agent owes to his clients a duty to exercise reasonable care in servicing the client's insurance needs. *United Farm Bureau Mutual Insurance Co. v. Cook* (1984), Ind.App., 463 N.E.2d 522, 526. Furthermore, where an insurance agent represents that insurance can be supplied, a duty is imposed on the agent to inform the client if it later turns out that insurance cannot be obtained. *Town & Country Ins. Co. v. Savage* (1981), Ind.App., 421 N.E.2d 704, 707, *reh. denied.*

In the present case, Blakesley informed Liberty that he had sold the property covered by its policy and wanted to transfer the policy to the new owner. Liberty advised Blakesley that the policy could not be assigned, but that Liberty would execute a new policy for Buss. Liberty cancelled Blakesley's policy but did not issue a new policy to Buss and did not inform Blakesley that a new policy had not been issued.

Whether Liberty executed its duty of care reasonably is a factual question for the jury. *Id.* A crucial fact in determining whether Liberty acted reasonably is whether it knew Blakesley had retained an interest in the property when he sold it. If Liberty did not know Blakesley retained an interest as a mortgagee, failure to inform him that a policy had not in fact been issued to Buss was not unreasonable because as far as it knew Blakesley no longer had an interest to protect. However, if Liberty did know, a jury could find that Liberty did not exercise reasonable care by failing to inform Blakesley that a new policy had not been issued upon cancellation of his own policy.

The evidence conflicts as to whether Blakesley informed Liberty of his mortgagee status. The letter from Blakesley's files notifying Liberty that he had sold the property indicates that he retained an interest as a second mortgagee. However, the letter from Liberty's files which it received from Blakesley does not indicate his mortgagee status. This is an issue of material fact which precludes summary judgment on the claim for negligence. The trial court erred in granting Liberty summary judgment on this issue."

Record, pp. 3A–4.

Trial on the issue of negligence commenced on August 29, 1989. The jury rendered a verdict for Blakesley and Liberty moved for judgment on the evidence or for a new trial. The trial court denied Liberty's motion and the instant appeal ensued.

## I.

### Denial of Motion for Summary Judgment

■ Liberty filed a second motion for summary judgment prior to the commencement of trial. Relying upon depositions taken from Paula Feree, Mark Wingler, and Wayne Blakesley in May 1989, Liberty contends that there remained no dispute regarding a fact which was dispositive of Blakesley's claim.[2] Liberty also argues

---

**2.** A factual dispute noted in the May 1988 opinion (whether Blakesley informed Liberty of his mortgagee status) was resolved at the taking of depositions in 1989. Blakesley's revised letter which noted that he was a mortgage holder and

that the supplemental affidavit of Blakesley should have been stricken. Liberty contends that Blakesley's affidavit, in which he denied receipt of information of non-coverage from Liberty, contradicted his deposition testimony. Blakesley replies that Liberty seeks to ignore the prior conclusion of this court that summary judgment was inappropriate as to the negligence issue.

When reviewing a motion for summary judgment, we liberally construe all evidence in favor of the nonmovant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion. *Bailey v. Martz* (1986), Ind.App., 488 N.E.2d 716, 719, *trans. denied*. In his 1989 deposition Blakesley asserted, as he asserted in his 1988 appeal, that he was assured that Liberty would execute a new policy for Buss. He denied that he was informed that the property stood uninsured. For purposes of reviewing a summary judgment motion, we assume that his assertions are true.

Paula Ferree denies that any assurance of future insurance was given. Mark Wingler, a former employee of Liberty Mutual, stated when deposed that, although he could not recall specific verbiage of a conversation with Blakesley, he would have informed him of the subject property's noninsured status, "knowing the way that I operated." Record, p. 136. There were yet existing after the taking of these depositions genuine issues of material fact including that enunciated in the May 1988 opinion: "Whether Liberty executed its duty of care reasonably." Record, p. 3–A.

■ Liberty contends that Blakesley's affidavit was used to create an issue of fact, but should have been stricken as a statement contradicting his earlier deposition testimony. Liberty relies upon *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, *reh. denied*. The *Gaboury* case held that: "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the

potential loss payee, had been located in a Lib-

affidavit is the credibility of the affiant." *Id.* at 1314.

Although Liberty makes much of Blakesley's inability to recall at what point, if ever, he spoke with Mark Wingler, we do not find that his equivocal testimony on this point was directly contradicted by the contents of his affidavit. He admitted to numerous communications with various Liberty employees, most of whose names he could not recall, over the preceding 25 years. However, the clear import of Blakesley's testimony was that no Liberty employee informed him at any time that the apartment building was uninsured due to an inability to write a policy for Michael Buss.

The trial court properly denied Liberty's second motion for summary judgment.

## II.

### Blakesley Testimony

■ Blakesley testified during his case-in-chief and again during the rebuttal portion of the trial. Upon direct examination, Blakesley denied that he was informed by any Liberty employee that an insurance policy could not be written for Buss. Record, p. 559. During the rebuttal portion of the trial, Blakesley was asked if he received information from a Liberty representative that Buss could not be provided insurance through Liberty. Liberty's counsel objected, contending that Blakesley's testimony would be speculative and conjectural.

The trial court overruled Liberty's objection without explanation. Liberty contends that this ruling was prejudicial, although Liberty had failed to object when essentially the same question was posed during Blakesley's case-in-chief.

If evidence is entered without objection, a party may not successfully claim upon appeal that it should not be considered. Even though evidence may be speculative or conjectural in nature, the reviewing court is not concerned with its competency

erty file.

and its probative value is for the jury.[3] *Charlie Stuart Oldsmobile, Inc. v. Smith* (1977), 175 Ind.App. 1, 369 N.E.2d 947, 949, *trans. denied.* No reversible error occurred.

## III.

### *Trial Rule 50 Motion*

■ Liberty next alleges that the trial court erred in failing to grant their Trial Rule 50 motion for judgment on the evidence or for a new trial. Liberty contends that no reasonable person could have found Blakesley's testimony of his reliance credible and that Blakesley was contributorily negligent as a matter of law.[4]

On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Reynolds v. Strauss Veal, Inc.* (1988), Ind.App., 519 N.E.2d 226, *trans. denied.*

We have reviewed the record in its entirety, considering the evidence in a light most favorable to Blakesley. It clearly supports the trial court's conclusion that:

"The case then resolves to a direct conflict upon the fact and relating to the credability [sic] of the parties as to the character of the notice given to the plaintiff by the defendant and relating to the fact that insurance was not in place and

whether or not the notice given was misleading. There being a direct conflict in the raw facts, and the emphasis which may be drawn from them, that issue is uniquely resolvable by the Jury and cannot be resolved by the Court."

Record, pp. 408–9.

While the trial court expressed some dissatisfaction with the jury's verdict, he nevertheless declined to grant a new trial. Liberty contends that this decision was erroneous.

■ The grant or denial of a motion for a new trial is within the broad discretion of the trial court, and we will reverse only for abuse of that discretion. *Ernst v. Ernst* (1987), Ind.App., 503 N.E.2d 619. A trial court is not obligated to set aside any verdict with which he or she disagrees, as explained by the court in *Ingersoll–Rand Corp. v. Scott* (1990), Ind.App., 557 N.E.2d 679, *trans. denied:*

"Mere conflicts or inconsistencies in testimony favoring the verdict do not give rise to mandatory operation of the Thirteenth Juror principle. The doctrine is not intended to invite the trial judge to cavalierly substitute his evaluation of the evidence in place of a contrary evaluation made by the jury. The relief is appropriate only if the jury's determination is unreasonable or improper."

*Id.* at 684.

Here, the trial court recognized the probability that his knowledge of insurance matters was more sophisticated than that of an average man, and declined to act as a thirteenth juror. He did not abuse his discretion in so doing.

---

**3.** Liberty contends that a basis for objection did not become apparent until Blakesley responded to the question immediately preceding the question upon which an objection was made. Blakesley was asked: "Did you have any telephone conversations with any Liberty Mutual representative within the week before that before receiving that letter?" Blakesley replied: "I certainly don't recall any conversation of any kind with them, no." Record, p. 872. Liberty interprets Blakesley's response as indicating a lack of recollection. Assuming the response did not constitute a denial that any conversation took place, but rather indicated that Blakesley suffered a lack of memory, admission of the

challenged evidence was merely harmless error. The substance of the testimony objected to had already been admitted into evidence during Blakesley's earlier testimony.

**4.** The events at issue occurred prior to the enactment of the Indiana Comparative Fault Act. Previously, contributory negligence operated as a complete defense to a negligence claim. Where facts were undisputed and only a single inference could be drawn therefrom, the question of contributory negligence was one of law. *Hundt v. La Crosse Grain Co., Inc.* (1983), Ind., 446 N.E.2d 327, 328–9.

## IV.

### Court's Final Instruction No. 6

■ Liberty next challenges the Court's Final Instruction No. 6 which provides:

"An insurance company upon undertaking a business relationship with a customer has a duty to exercise reasonable and ordinary care in handling the insurance needs of the customer.

In discharging that general duty, an insurance company has specific duties:

1. To make those inquiries of the customer which would serve to disclose information necessary to reasonably handle the customer's insurance needs.

2. To timely notify the customer if the risk which the customer seeks to insure does not meet underwriting standards and cannot be by the company insured.

3. To avoid misleading the customer into believing that a risk has been insured when in fact it has not or cannot be insured.

4. To fulfill any promises which the company makes to the insured respecting the obtaining of desired insurance coverage.

The failure of an insurance company to use due care in discharging any one or more of those general and specific duties is negligence, if, under similar circumstances, a reasonably prudent insurance company desiring to perform those duties would not have failed to do so."

Record, p. 1000.

Liberty asserts that portions of the foregoing instruction were unsupported by the record. Further, Liberty argues that an instruction concerning a duty to fulfill a promise violated the law of the case.

■ A jury instruction which misstates the law will serve as grounds for reversal unless the court on appeal finds that the error was harmless, i.e., that it did not impinge upon the substantial rights of the party. *Kurowsky v. Deutsch* (1989), Ind., 533 N.E.2d 1210, 1211.

The court's instruction was admittedly broader than that required by the evidence. The court stated: "... the only basis for liability rests upon the potential failure of the defendant in failing to notify the plaintiff that he could not rely upon the defendant to obtain insurance to cover the risk of the property purchaser." Record, p. 407.

■ The trial court expressed his belief that the decision of the jury was unaffected by the breadth of the instruction. However, the instruction as given permitted the jury to predicate liability on one or more potential breaches of duty not at issue in the instant case. We cannot say with confidence that the jury rested its decision upon an appropriate basis for liability when bases unsupported by the evidence were additionally permitted.

Moreover, the jury may have been misled by the reference to a duty to fulfill any promises made. In our opinion of May 1988, we rejected Blakesley's contention that the language of Paula Feree's letter of August 31, 1984 could be construed as a promise of continuous insurance coverage. "An expression of intention or a prediction is not a promise." Record, p. 4–A.

We conclude that Final Instruction No. 6 was so prejudicial as to require reversal.

## V.

### Liberty's Tendered Instructions 5 and 7

Our disposition of Issue IV, *supra,* renders our further examination of the trial court's instruction to the jury unnecessary.

## VI.

### Testimony of Attorney Robert Reed

■ Liberty finally argues that the trial court should have permitted testimony from Blakesley's former attorney, Robert Reed, concerning his advice to Blakesley upon the consummation of the real estate transaction with Buss. As Liberty would undoubtedly hope to offer Reed's testimony at a new trial, we address the issue of waiver of attorney/client privilege.

Blakesley stated upon cross-examination that he received advice from Attorney Reed concerning the terms and conditions of his agreement with Buss. Liberty asserts that

Blakesley thereby waived his attorney/client privilege and that any discussion with Attorney Reed concerning the subject transaction was no longer confidential.

Our supreme court has held that the attorney/client privilege is not an absolute privilege, but is one which may be waived by the client. *Whitehead v. State* (1986), Ind., 500 N.E.2d 149, 154. The court stated: "Where the client testifies as to a specific communication or offers his attorney's testimony as to that communication, he thereby waives the privilege against disclosure of the whole of the communication." *Id.*

While Blakesley admitted that he obtained legal advice concerning the transaction with Buss, he disclosed no details of any specific communication with his former attorney. Nor did Blakesley offer the testimony of Attorney Reed. He cannot fairly be said to have waived his attorney/client privilege under the standard enunciated in *Whitehead.*

Reversed and remanded for a new trial.

RATLIFF, C.J., and CONOVER, J., concur.