PROGRESSIVE INSURANCE
COMPANY, Appellant,

v.

GENERAL MOTORS CORPORATION,
Appellee.[1]

Ford Motor Company, Appellant,

v.

Progressive Insurance Company,
Appellee.[2]

General Motors Corporation, Appellant,

v.

United Farm Bureau Insurance,
Appellee.[3]

Ford Motor Company, Appellant,

v.

Foremost Insurance Co., Appellee.[4]

Progressive Insurance Company,
Appellant,

v.

Ford Motor Company, Appellee.[5]

No. 56A03–9812–CV–534.

Court of Appeals of Indiana.

June 20, 2000.

1. Hereinafter referred to as "Case 1." Original Court of Appeals Cause No. 56A03–9812–CV–534.

2. Hereinafter referred to as "Case 2." Original Court of Appeals Cause No. 49A02–9905–CV–363.

3. Hereinafter referred to as "Case 3." Original Court of Appeals Cause No. 49A04–9908–CV–351.

4. Hereinafter referred to as "Case 4." Original Court of Appeals Cause No. 20A03–9909–CV–372.

5. Hereinafter referred to as "Case 5." Original Court of Appeals Cause No. 49A04–0001–CV–24.

Julia Blackwell Gelinas, Jeffrey J. Mortier, Kevin C. Schiferl, Locke Reynolds, Indianapolis, Indiana, Attorneys for General Motors and Ford Motor Company.

Michael E. Simmons, Mitchell M. Pote, Hume Smith Geddes Green & Simmons, Indianapolis, Indiana, Attorneys for Progressive Insurance Company.

Ronald W. Frazier, Frazier Law Office, Indianapolis, Indiana, Attorney for United Farm Bureau Insurance.

## OPINION

SULLIVAN, Judge

This consolidated appeal involves five summary judgment rulings as between an automobile manufacturing company, either General Motors Corporation (GM), or Ford Motor Company (Ford) on the one hand and one of three insurance companies, Progressive Insurance Company (Progressive), United Farm Bureau Insurance (United) and Foremost Insurance Company (Foremost). GM and Ford appeal the denial[6] of summary judgment.

We affirm in part and reverse in part.

The facts in Case 1 reveal that on October 19, 1996, a driver noticed smoke coming from his 1994 GMC Jimmy. He pulled to the side of the road, which was across the street from a fire station. The smoke developed into a fire. Although the fire department attempted to put out the fire, the vehicle was destroyed within a few minutes. Similarly, in Case 2, on May 24, 1996, a 1992 Ford F450 was severely damaged after a fire while it was parked on the owner's farm. On August 11, 1996, in Case 3, a Chevrolet C1500 Suburban was destroyed after a fire. In Case 4, on March 29, 1997, a Newmar Motor Home containing a Ford chassis and engine was severely damaged when it caught fire while in a Ford service shop. Finally, in Case 5, a 1995 Ford F600 suffered extensive damage as a result of a March 3, 1997 fire which occurred while the truck was making deliveries.

The owners in all of the cases filed insurance claims with their insurance companies, and the insurance companies paid the owners for the destroyed vehicles. In turn, each insurance company, as subrogee, sued the respective manufacturer, GM or Ford, to recover for the damage the vehicles sustained.[7] It was alleged in Case 1, Case 2, Case 4 and Case 5 that defective wiring caused the fire. In Case 3, the insurance company alleged that there was a defect in the fuel line. Additionally, in Case 4, defects in the fuel line and transmission line were alleged.

In each case, GM or Ford filed motions for summary judgment. In Case 1, GM's motion was granted. In Case 2, Ford's motion for summary judgment was denied. In Case 3, the court denied GM's motion, but granted a summary judgment motion filed by the insurance company. In Case 4, Ford's motion was denied. Finally, in Case 5, Ford's motion for summary judgment was granted. This consolidated appeal ensued.

The question before this court is whether the insurance companies, by subrogation, may recover in tort under theories of strict liability and negligence for damage sustained by the vehicles after they caught fire. Specifically, the issue is

---

**6.** Although the summary judgment motions in Case 2, Case 3, and Case 4 were denied, the summary judgment motions in Case 1 and Case 5 were granted and Progressive appealed the grant of summary judgment. In order to simplify discussion of this consolidated appeal, the cases will be analyzed together.

**7.** In Case 4, Foremost also sued Newmar Corporation because it manufactured the motor home, which contained a Ford chassis and engine, involved in the fire. However, Newmar Corporation is not involved in this appeal.

whether the Indiana Products Liability Act (the "Act")[8] allows recovery for this type of loss. The Act states:

> "a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for *physical harm* caused by that product to the user or consumer *or to the user's or consumer's property* if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition...." I.C. 33–1–1.5–3(a) (Burns Code Ed. Supp.1995).[9] (emphasis supplied).

Physical harm is defined in I.C. 33–1–1.5–2(2) (Burns Code Ed. Supp.1995)[10] as "bodily injury, death, loss of services, and rights arising from any such injuries, as well as *sudden major damage to property.* The term does not include gradually evolving damage to property or economic losses from such damage." (Emphasis supplied). While sudden major damage to property has not been defined by statute, case law has described it as quick, unexpected and of a calamitous nature. *Reed v. Central Soya Co.* (1993) Ind., 621 N.E.2d 1069, 1071, *modified on other grounds by* (1994) Ind., 644 N.E.2d 84.

Although the automobile companies do not contest that the harm to the vehicles was sudden and major, they contend that they are entitled to summary judgment for claims based upon the Act because the insurance companies may not recover for a purely economic loss to the product, *i.e.* the vehicle, itself. Instead, to obtain recovery under the Act, the product must damage other property or injure persons. The automobile companies cite *Martin Rispens & Son v. Hall Farms, Inc.* (1993) Ind., 621 N.E.2d 1078, *reh'g denied,* and

*Reed, supra,* 621 N.E.2d 1069, to support their position.

The Indiana Supreme Court interpreted the Act in *Martin Rispens.* This case involved a farming company suing a retailer for defective watermelon seeds. Justice Krahulik, on behalf of the court, wrote with respect to the plaintiff's strict liability claim, "we note that Hall Farms' claim is based on damage to the product itself. Strict liability in tort is inapplicable to claims of such damage because the proper remedy is warranty." *Id.* at 1089. Further, the court held with regard to the plaintiff's negligence claim that "[e]conomic losses are not recoverable in a negligence action premised on the failure of a product to perform as expected unless such failure causes personal injury or physical harm to property other than the product itself." *Id.* at 1091. *See also Reed, supra,* 621 N.E.2d at 1074 (holding that dairy farmers could not recover under the Act for allegedly defective feed).

Barring recovery under the Act when only the product itself is damaged is founded upon the core separation between tort law and contract law. The distinction is based upon a manufacturer's differing responsibilities in placing its product into the stream of commerce and the balancing of risks. *Martin Rispens, supra,* 621 N.E.2d at 1090. While a manufacturer should be held liable if its product causes physical harm to a person or other property, it should not be held accountable if its product does not perform to the consumer's economic expectations unless the manufacturer guarantees the product's performance. *Id.* If the manufacturer guarantees performance, then it undertakes the risk of loss, and that allocation of risk is best handled by contract principles including warranty law. *Id. See also* Jay M. Zitter, Annotation, *Strict Products*

---

**8.** I.C. 33–1–1.5–1 *et seq.* (Burns Code Ed. Supp.1995). For current provision, *see* I.C. 34–20–1–1 *et seq.* (Burns Code Ed. Repl. 1998).

**9.** For current provision, *see* I.C. 34–20–2–1 (Burns Code Ed. Repl.1998).

**10.** For current provision, *see* I.C. 34–6–2–105 (Burns Code Ed. Repl.1998).

*Liability: Recovery for Damage to Product Alone* 72 A.L.R.4th 12 (1989 & Supp. 1999) and 63B AM JUR 2d *Products Liability* §§ 1912–30 (1997 and Supp.1999).

In the instant case, the automobile companies assert that contract law and specifically, the Uniform Commercial Code are the more appropriate channels for recovery. If these mechanisms do not provide a remedy due to the statute of limitations, failure to comply with warranty restrictions, or other problems, then consumers may deal with the risk of loss by purchasing insurance to cover damage to their vehicles. Here, all the owners decided to cover a potential loss by purchasing insurance for their vehicles and were reimbursed by the insurance companies for their losses.

Recently, we revisited *Martin Rispens* in *Interstate Cold Storage, Inc. v. General Motors Corp.* (1999) Ind.App., 720 N.E.2d 727, *trans. denied.* In that case, the trial court granted summary judgment for the truck manufacturer after a truck was destroyed when it caught fire. No allegation of injury or damage was asserted other than the damage to the truck itself. We affirmed the trial court's entry of summary judgment. *Id.* at 731. The appellant whose truck suffered sudden and major damage in *Interstate* argued that *Martin Rispens* was distinguishable because the plaintiff's loss in *Martin Rispens* was gradual, and that Justice Krahulik's comments which barred recovery unless the product damaged other persons or property should be limited to cases in which the damage is gradual, and therefore, not included in the Act. We held that:

> "[i]t may well be that the supreme court intended its statements in *Martin Rispens* to encompass only the gradually evolving damage found in that case, although they are not by their express

terms so limited. However, the language of the Act supports an extension of the statement to even the 'sudden, major damage' we have here." *Id.*

The statements made by Justice Krahulik, therefore, in *Martin Rispens* are applicable to situations where sudden, major damage occurred.

■ Justice Krahulik's opinions in *Martin Rispens* and *Reed* stand for the proposition that a consumer may not recover under the Act for damage caused by a defective product unless the product also damages other property or injures a person. Because we are not at liberty to recast his opinions, we affirm the trial court's entry of summary judgment for GM in Case 1 and Case 5 but reverse the denials of summary judgment in Case 2, Case 3, and Case 4.[11]

Were we able to write upon a clean slate, however, we would acknowledge that I.C. 33–1–1.5–3(a) of the Act seems to allow more than one interpretation. The automobile companies emphasize our conclusion in *Interstate* that the words "product" and "property" are not used interchangeably in the statute. The insurance companies contend that any distinction in usage of the words "product" and "property" in the statute is meaningless to a consumer. We acknowledge the concern, and recognize that consumers in fact consider all of their belongings as property, and do not make a distinction between products and property. If we were at liberty to reevaluate the statute's meaning, then we may agree that the language of the provision at least lends itself to the proffered interpretation.

We also recognize that by barring recovery for damage to the product itself, we are leaving some without a remedy. The excuse for not allowing recovery focuses

---

**11.** We note that in an even more recent case, *I/N Tek and I/N Kote v. Hitachi, Ltd.,* No. 71A03–9905–CV–204 (May 4, 2000) Ind.App., —— N.E.2d ——, we applied *Interstate* and *Martin Rispens* to conclude that despite statutory construction arguments made by the

steel mill operator, the steel mill operator could not recover under the Act from a manufacturer when only the product itself was damaged. *Hitachi* merely provides further support for our reasoning today.

upon the idea that people have other ways to recover such as upon a manufacturer's warranty. While it may be true that this transaction is one better handled by contract law which allows parties to bargain freely, including warranties and their terms, it is a practical reality that some people such as remote users who do not buy the vehicle from the manufacturer directly will not have recourse against a manufacturer who has placed a defective product in the stream of commerce. Even in this type of transaction, however, consumers may bargain with the seller for a warranty. Be that as it may, they often do not or cannot bargain for a warranty or gain legal recourse against the non-manufacturer.

Remote users are not the only consumers left without recourse. Original purchasers may too find themselves without a remedy if they do not comport with strict warranty requirements. It may be considered inequitable to leave such a large number of consumers without a remedy, while allowing manufacturers who have placed a defective product in the market to remain free from liability.

Finally, we do not fully understand the justification for permitting recovery under the Act if the product damages other property but barring recovery for "damage to the product itself." The justification posed is that consumers have other options of recourse when the product itself is damaged. When other property is damaged as a result of the defective product, however, consumers do not have any other method by which to recover for their loss. This justification seems illogical when we analyze it within a practical situation.

For example, a consumer who owns two vehicles, one Ford and one GM, stores them beside each other in his garage. The Ford begins smoking due to defective wiring, and the resulting fire destroys both the Ford and the GM and causes damage to the garage. Under current law, this consumer could recover under the Act for the damage caused to his GM and his garage, but he could not recover for the Ford, which originated the fire. After putting the Act's seemingly bright line rule into practice, it seems incongruous that if one had two cars parked beside each other, that he could recover for one and not the other.

Despite our concerns, we are bound by Indiana law as established by the Act and our Supreme Court's opinion in *Martin Rispens*. Therefore, the insurance companies, on behalf of the owners, may not recover under the Act for the damage sustained to the vehicles. The judgment with respect to Case 1 and Case 5 is affirmed. The judgment with respect to Case 2, Case 3, and Case 4 is reversed and remanded to the trial court to enter summary judgment for GM or Ford.

BAKER, J., and KIRSCH, J., concur.