HITACHI CONSTRUCTION MACHINERY COMPANY, LTD., and Hitachi Construction Machinery (America) Corporation, Appellants–Defendants,

v.

AMAX COAL COMPANY, Appellee–Plaintiff.

No. 77A04–9908–CV–356.

Court of Appeals of Indiana.

Oct. 31, 2000.

Rehearing Denied Jan. 8, 2001.

Christopher D. Lee, Todd C. Barsumian, Kahn, Dees, Donovan & Kahn, Evansville, Indiana, Richard A. Mescon, Carolyn W.

Jaffee, Morgan, Lewis & Bockius, New York, New York, Attorneys for Appellants.

Karl L. Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

On July 11, 1995, AMAX Coal Company ("AMAX") initiated an action against Hitachi Construction Machinery Company, Ltd. ("HCM") and Hitachi Construction Machinery (America) Corporation ("HCMA")[1] (collectively "Hitachi"). AMAX's complaint sought recovery for damages to a Hitachi EX–3500 excavator (the "Excavator") that caught fire at AMAX's coal mine located in Sullivan County, Indiana.[2] The jury returned a verdict against Hitachi, and awarded AMAX damages of $2,089,066.50. We reverse in part and remand in part.

### Issues

The parties raise several issues on appeal, of which the following two are dispositive:

I. Whether the trial court abused its discretion when it denied Hitachi's motion for judgment on the evidence; and,

II. Whether AMAX retains a cause of action under an implied warranty theory.

### Facts and Procedural History

The facts and proceedings pertinent to the dispositive issues on appeal are as follows. In 1990, AMAX purchased an

---

**1.** Additionally, AMAX's complaint named the following as defendants: Rudd Equipment Company, the seller of the Excavator; Ansul Incorporated, the maker of the fire suppression system; and M & S Fire & Safety, Inc., the installer of the fire suppression system. The jury found in favor of the aforementioned defendants, and as such they are only nominal parties to this appeal. *See* App. Rule 2(B).

**2.** More specifically, AMAX's complaint sought to recover damages to the Excavator on theories of strict liability under Indiana's Product Liability Act, negligence, and breach of warranties. However, AMAX later moved to dismiss the negligence claims of its complaint, and this motion was granted by the trial court.

Excavator for $2,597,000.00. The Excavator was designed, manufactured and distributed by Hitachi. Rudd Equipment Company ("Rudd") was Hitachi's authorized dealer for the sale. Pursuant to AMAX's request, Rudd arranged for the Excavator to be equipped with a fire suppression system prior to delivery. The fire suppression system was designed and manufactured by Ansul, Inc. ("Ansul") and custom fitted to the Excavator by M & S Fire & Safety, Inc. ("M & S").

On July 12, 1993, a fire started on the Excavator. The fire suppression system activated, but failed to extinguish the fire. As a result of this fire, the Excavator sustained heavy damages. Hitachi's investigation determined that the fire began in the rear of the machine where the fan sprayed hydraulic fluid onto the hot engine turbochargers. AMAX's liability experts agreed with these findings. AMAX alleged that the fire was the result of certain defects in the design of the Excavator; specifically, (1) insufficient turbocharger shielding, (2) improper routing of hydraulic lines, and (3) failure to include a check valve on the fast fill line which allowed the fuel tank to feed the fire.

On September 15, 1995, Hitachi moved to dismiss AMAX's complaint, arguing in part that AMAX's strict liability count, which invoked Indiana's Product Liability Act ("Act"), failed to state a claim under Indiana Code section 33–1–1.5–3. Hitachi's motion to dismiss was denied on January 31, 1996. On May 20, 1999, Hitachi filed a motion for summary judgment, again seeking to defeat AMAX's complaint based on the Act. Hitachi's motion was denied on September 2, 1999. Both at the

close of AMAX's case-in-chief, on June 29, 1999, two weeks after the jury trial was commenced, and subsequently on July 6, 1999, Hitachi sought to dismiss AMAX's strict liability claim under the Act by way of motions for judgment on the evidence. The trial court denied these motions. On September 2, 1999, the jury returned a verdict against Hitachi.[3] This appeal followed.

### Discussion and Decision

*I. Whether the trial court abused its discretion when it denied Hitachi's motion for judgment on the evidence*

On appeal, Hitachi re-alleges the two-part argument found in its previous motion to dismiss, motion for summary judgment, and motions for judgment on the evidence; namely, that (1) AMAX may not recover under the Act for a strictly economic loss to its Excavator, and (2) that the fire suppression system does not constitute "other property."[4] We agree.

*Standard of Review—Judgment on the Evidence*

 The purpose for judgment on the evidence is to test the sufficiency of the evidence. *Zemco Manufacturing, Inc. v. Pecoraro,* 703 N.E.2d 1064, 1071 (Ind.Ct. App.1998), *trans. denied.* The grant or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Id.* Indiana Trial Rule 50 reads, in pertinent part, as follows:

(A) Judgment on the Evidence—How Raised—Effect. Where all or some of the issues in a case tried before a jury

---

3. The jury found in favor of defendants Rudd, Ansul, and M & S.

4. AMAX claims that Hitachi waived its reply argument that the fire suppression system was not "other property[,]" reasoning that Hitachi failed to address this issue in its appellate brief. However, Hitachi's appellate brief plainly asserts the alleged errors of the trial court, including its central allegation that the trial court erred by failing to dismiss

AMAX's strict liability claim brought under Indiana's Product Liability Act. Moreover, Hitachi's applicable argument section offers reasons, supported by case law and record citations, which clearly comply with the letter and spirit of Indiana Rule of Appellate Procedure 8.3(A)(7). Thus, we summarily reject AMAX's contention that Hitachi was required to argue those issues which AMAX *may* raise to counter Hitachi's allegation of error, as such is the role of a reply brief.

or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

As stated in *Liberty Mutual Ins. Co. v. Blakesley*, 568 N.E.2d 1052 (Ind.Ct.App. 1991):

On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim.

*Id.* at 1057. When reviewing a trial court's ruling on a motion for judgment on the evidence, we examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as qualitative perspective. *Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1150 (Ind.Ct.App.1990). Quantitatively, evidence may fail only where there is none at all. *Carbo, Inc. v. Lowe*, 521 N.E.2d 977, 980 (Ind.Ct.App.1988). Qualitatively, however, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom. *Id.* The failure of inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. *Id.*

### Indiana Products Liability Act

The Indiana Products Liability Act ("Act") governs all actions brought by a user or consumer of a product, "regardless of the substantive legal theory upon which the action is brought." IND.CODE § 34–20–1–1. In the present case, we consider several sections of the Act and recent Indiana case law to determine whether the Act imposes liability on Hitachi for AMAX's strict liability claim.

Indiana Code section 34–20–2–1 of the Act provides as follows:

[A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for *physical harm* caused by that product to the user or consumer or to the user's or consumer's property . . . .

(Emphasis added.) "Physical harm" is defined as:

bodily injury, death, loss of services, and rights arising from any such injuries, as well as *sudden, major damage* to property. The term does not include gradually evolving damage to property or *economic losses* from such damage.

IND.CODE § 34–6–2–105 (Emphasis added.) Case law has further come to define "sudden, major damage" as damage which is quick, unexpected and of a calamitous nature. *See Progressive Ins. Co. v. General Motors Corp.*, 730 N.E.2d 218, 220 (Ind.Ct. App.2000) and *Interstate Cold Storage v. General Motors Corporation*, 720 N.E.2d 727, 730 (Ind.Ct.App.1999) *trans. denied* (both citing *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069 (Ind.1993)).

However, a person may not recover for "sudden, major damage[,]" "caused by a defective product unless the product also damages *other property* or injures a person." *Progressive*, 730 N.E.2d at 221 (citing *Reed*, 621 N.E.2d 1069 and *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078 (Ind.1993) (emphasis added)). "Other property" is that which is "wholly outside and apart from the product itself." *I/N Tek v. Hitachi, Ltd.*, 734 N.E.2d 584, 588 (Ind.Ct.App. 2000) *trans. denied.* Moreover, "the Act does not use the terms 'product' and 'property' interchangeably[,]" as "[t]he language

of the Act contemplates the defective product acting on some other property causing some harm to it." *Interstate Cold Storage*, 720 N.E.2d at 730. Accordingly, a person may not recover under the Act when only the product itself has been destroyed. *Progressive*, 730 N.E.2d at 220.

### Analysis

Recently, in *I/N Tek v. Hitachi, Ltd.*, 734 N.E.2d 584, this Court squarely addressed whether "sudden and major" damage to a product itself is sufficient to recover under the Act. Additionally, *I/N Tek* defined "other property[.]" In *I/N Tek*, Hitachi manufactured and supplied the equipment comprising a tandem steel mill operated by I/N Tek. The pertinent facts of *I/N Tek* are as follows:

> On February 19, 1995, a shaft attached to a pinion gear which is a component part of the tandem mill's number one stand failed, causing damage to the tandem mill and its component parts and shutting down production for a period of time. No one suffered personal injury as a result, although a steel coil owned by Inland Steel Company was in process at the time of the failure and was damaged.

*Id.* at 586. We held as follows:

> The undisputed material facts in this case are that the tandem mill owned by I/N Tek and manufactured by Hitachi suffered damage as a result of a defect in the product itself. *However, only the mill itself and its component parts was [sic] damaged. Therefore, Indiana's Product Liability Act does not cover I/N Tek's loss.* The trial court properly granted summary judgment in favor of Hitachi and against I/N Tek on I/N Tek's claims under the Act.

*Id.* at 588 (emphasis added.) Additional factors which distinguish "other property" and a "product[,]" may be gleaned from the Supreme Court's decision in *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997).

In *Saratoga Fishing Co.*, the owner of a fishing vessel that caught fire and sank brought a products liability suit against the builder of the vessel and the designer of the vessel's hydraulic system, alleging that the system was defectively designed. Not only was the vessel itself lost, but also those items that had been added by the previous owner. The Supreme Court held as follows:

> When a manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the "product itself" . . . Items added to the product by the Initial User are therefore "other property," and the Initial User's sale of the product to a Subsequent User does not change these characterizations.

Accordingly, the Supreme Court denied recovery for the product itself, the vessel and the hydraulic system (that was manufactured by a different company), and only allowed recovery for those items added by the initial user.

■ Here, AMAX's purchase order for the Excavator, as installed with the fire suppression system, was the culmination of extensive negotiations between itself and Rudd. This purchase order specifically requested that Hitachi's dealer, Rudd, include the option of a fire suppression system on the Excavator. Thereafter, maker Ansul supplied a fire suppression system, and it was then custom-fitted to the Excavator by M & S. As such, AMAX, the initial user of the Excavator, received a bargained for product equipped with a fire suppression system akin to the vessel and hydraulic system received by the owner in *Saratoga Fishing Co.*

Moreover, the manner in which the fire suppression system was installed precludes it from being "wholly outside and apart from" the Excavator itself. *See I/N Tek v. Hitachi, Ltd.*, 734 N.E.2d at 588. An M & S technician testified in part as follows:

> Q: Okay. So your system, while it's a pre-engineered system, you essen-

tially custom design these installations for each piece of equipment?

A: Yes.

(R. 1596.) In general terms, the fire suppression system installed on the Excavator functioned as follows: detectors, which were wired into the electronics assembly of the Excavators' engines, would discharge fire-suppressing chemicals and shut off the Excavators' two engines when they registered a certain level of heat. These functions show the fire suppression system to be an integrated component of the Excavator purchased by AMAX. Thus, the Excavator and fire suppression system constitute one bargained for product, the damage to which is not recoverable under Indiana's Product Liability Act. Accordingly, AMAX's failure to present evidence from which one could reasonably infer that the fire suppression system was other property, caused its strict liability count to fail as a matter of law.

## II. Whether AMAX retains a cause of action under an implied warranty theory

As an alternative theory to recovery under the Act, AMAX argues that the trial court "wrongfully deprived plaintiff of the right to have its implied warranty claim decided by a jury." (Appellee's brief at 35.) We agree.

### The Act and the Uniform Commercial Code

Actions brought under the Act and the Uniform Commercial Code "represent two different causes of action ... [t]he Product Liability Act governs product liability actions in which the theory of liability is negligence or strict liability in tort, while the UCC governs contract cases which are based on breach of warranty." *B & B Paint Corp. v. Shrock Mfg., Inc.,* 568 N.E.2d 1017, 1020 (Ind.Ct.App.1991). "The UCC and the Product Liability Act provide alternative remedies." *B & B Paint Corp.,* 568 N.E.2d at 1020. Furthermore, "[t]he adoption of the Products Liability Act did not vitiate the provisions of the UCC." *Id.*

### Analysis

Count III of AMAX's complaint alleged the following:

12. At all times hereto, including the time of the redesign and retrofitting work in 1993, Hitachi impliedly warranted that its Model 3500 excavator was of merchantable quality and was fit, safe, and in proper condition for the ordinary and particular purposes for which the excavator was designed and sold.

13. However, ... the ... excavator was not of merchantable quality, and was unfit, unsafe, and unsuited for the particular purposes for which it was designed and sold, ..., in that the excavator had a substantial propensity to develop damaging and destructive fires during normal use.

14. On July 12, 1993, in violation of said implied warranties ..., the Hitachi 3500 caught fire during normal use, ..., and resulting in extensive damage to the machine.

15. As a direct and proximate result of Hitachi's breach of its implied warranties ..., AMAX sustained damages....

However, by order of the trial court Count III was "subsumed into Count II [asserting strict liability under the Act] of the Complaint." (R. 620.)

AMAX's Count III clearly sounded in contract, and may not be considered an allegation of negligence or strict liability in tort to be "subsumed" by the Act. Moreover, as the trial court's order effectively precluded issues of warranty from being fully litigated at trial, we are not in a position to decide any such issues on ap-

peal. Accordingly, we remand Count III to the trial court for further proceedings, noting that AMAX's implied warranty theory, which sounds in contract, *may* form the basis for recovery.

Reversed in part and remanded in part.

SULLIVAN, J., and VAIDIK, J., concur.