**S.E. JOHNSON COMPANIES, INC.,**
**Appellant–Defendant,**

v.

**Michael L. JACK and Amy S. Jack,**
**Appellees–Plaintiffs.**

**No. 49A02–0010–CV–667.**

Court of Appeals of Indiana.

July 11, 2001.

W. Brent Threlkeld, Robert F. Ahlgrim, Jr., Indianapolis, IN, Attorneys for Appellant.

Harry A. Wilson, Jr., Indianapolis, IN, Attorney for Appellees.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant S.E. Johnson, Inc. ("S.E. Johnson") appeals from a jury verdict in favor of Plaintiffs–Appellees Michael L. Jack and Amy S. Jack (collectively "the Jacks"). We affirm.

### ISSUES

S.E. Johnson raises the following issues that we restate as:

I. Whether the trial court erred by denying S.E. Johnson's motions for judgment on the evidence based upon its assertion that the State of Indiana, as the owner of the highway, had accepted S.E. Johnson's work at the end of each day, thereby extinguishing any duty S.E. Johnson, an independent contractor, might have owed to the Jacks.

II. Whether the trial court erred by denying S.E. Johnson's motion to set-off the excess amount the Jacks may have received as part of a loan repayment agreement entered into between the Jacks and R.L. McCoy ("McCoy").

### FACTS AND PROCEDURAL HISTORY

In 1995, the Indiana Department of Transportation ("INDOT") advertised for bids for a bridge rehabilitation project in Steuben County. McCoy is a bridge contractor and wanted to submit a bid in an attempt to secure the contract. S.E. Johnson submitted a bid to McCoy to act as a subcontractor on the project for work involving asphalt and the construction of cross-overs, a roadway constructed within the median of the highway in the shape of a large "X", to divert traffic to the opposite lane of the highway during construction, within the median of Interstate 69. Cross-overs were to be installed north and south of the Pigeon Creek Bridge in the fall of 1996 for rehabilitation work on the bridge beginning in the spring of 1997.

The State of Indiana accepted McCoy's bid and awarded the contract to McCoy for the repair of the bridges over Pigeon Creek. McCoy executed contract documents with the State and entered into a subcontract agreement with S.E. Johnson after the State approved S.E. Johnson as a subcontractor.

On October 29, 1996, INDOT held a pre-construction meeting. INDOT's area engineer, John Studler, chaired the meeting. Employees of Johnson and McCoy attended the meeting as did INDOT's project engineer, John Taylor. Taylor was the individual responsible for formulating the traffic control plan. Ultimately, daily lane closures were used. One issue that was not resolved at the meeting was whether the shoulder adjacent to the travel lane might be removed. Taylor was to decide whether to remove the shoulder after he had inspected the depth of the asphalt that made up the shoulder.

On November 4, 1996, S.E. Johnson began work on the construction of the south cross-over. Once the traffic control devices were in place, an S.E. Johnson employee used a bulldozer to remove the portion of the median next to the shoulder of the roadway. Taylor inspected the depth of the asphalt that made up the shoulder. He contacted Studler and together they decided that the shoulder of the roadway had to be removed. Taylor instructed S.E. Johnson to remove the shoulder of the roadway.

An S.E. Johnson employee removed the shoulder of the roadway in the south excavation with a bulldozer. Taylor observed that during the process of removing the shoulder of the roadway with a bulldozer, a portion of the roadway spauled, which meant that chunks of top pavement peeled off from the roadway. Additionally, portions of the yellow line were removed.

Taylor did not stop the removal of the shoulder on the south cross-over, but instructed S.E. Johnson to have asphalt delivered to the site to patch the areas where the pavement had spauled before closing the project for the day. S.E. Johnson completed the repairs and Taylor inspected and approved Johnson's repairs to the pavement. Taylor examined the yellow edge line and believed that the line was still functional. Therefore, Taylor did not order repairs to the yellow line.

Taylor instructed S.E. Johnson to construct mounds of dirt within the excavation upon which to place the orange drums immediately adjacent to the roadway. Taylor also instructed S.E. Johnson to place the orange drums on the mounds of dirt. Taylor remained on site until S.E. Johnson completed constructing the mounds of dirt and placing the orange drums.

On November 5, 1996, S.E. Johnson excavated the north cross-over. The same procedure was followed in setting up and taking down the work zone traffic control devices. However, S.E. Johnson used a Vermeer saw to separate the shoulder from the roadway instead of using the bulldozer as they had the day before. Taylor stayed until the work zone traffic control devices were removed. On November 6, 1996, S.E. Johnson placed stone in the north cross-over and approximately half of the south cross-over. The same procedure was used to set up and take down the work zone traffic control devices

with the exception of using mounds of gravel instead of dirt upon which to place the orange drums. Taylor stayed until the work zone traffic control devices were removed. No work was done on the project on November 7, 1996, because it rained.

On November 8, 1996, as Michael Jack, approached the south cross-over he began traveling in the left lane in order to pass a semi tractor trailer. While passing in the left lane, Jack no longer saw a portion of the yellow edge line, and the left front tire of Jack's Geo Tracker left the roadway and fell into the excavation. As the vehicle left the roadway, it struck one of the orange drums. Jack's vehicle remained upright through the excavation and the median before colliding with the exposed portion of the northbound lanes of I 69. The impact of that collision caused Jack's vehicle to roll. Jack was ejected from the vehicle and suffered a spinal cord injury resulting in paraplegia.

The Jacks brought a personal injury claim against McCoy, Three Rivers Barricade & Equipment Co., Inc., S.E. Johnson Companies, RQAW Corporation, INDOT, and the State of Indiana. After a motion for summary judgment Three Rivers Barricade & Equipment Co., Inc. and RQAW Corporation were dismissed as defendants. Prior to trial, McCoy and the Jacks entered into a loan repayment agreement and release. Pursuant to that agreement, the Jacks received two checks totaling $1,500,000.00.

S.E. Johnson filed an objection to the dismissal of McCoy, and filed a motion for leave to amend its answer for the purpose of asserting a nonparty defense. The trial court granted S.E. Johnson's motion to amend. McCoy was then added as a nonparty to the action.

The matter proceeded to jury trial. At the close of the Jacks' case-in-chief, S.E.

Johnson filed a motion for judgment on the evidence. The trial court denied the motion after hearing argument on the motion.[1] At the conclusion of S.E. Johnson's case-in-chief, S.E. Johnson moved for judgment on the evidence. The trial court denied that motion as well. The jury rendered its verdict which was reduced to judgment by the trial court. The jury found that the total damages were $5,000,000.00 with respect to Michael Jack's claims, and $400,000.00 with respect to Amy Jack's claims. The jury then allocated the percentage of fault as follows:

| | |
|---|---|
| Plaintiff, Michael L. Jack | 50% |
| Defendant, S.E. Johnson Companies, Inc. | 15% |
| Defendant, State of Indiana | 25% |
| Non–Party, R.L. McCoy, Inc. | 10% |

(R. 125–26). The jury found that the State of Indiana was partially at fault for the incident. However, the Jacks could not recover from the State of Indiana because contributory negligence was a complete defense.

After judgment was entered, S.E. Johnson filed a motion for set-off requesting a set-off of $960,000.00, the amount by which McCoy's settlement payment exceeded its liability. McCoy filed a motion to enforce the settlement agreement between McCoy and the Jacks. On October 18, 2000, the court denied both motions. This appeal ensued.

## DISCUSSION AND DECISION

### I. MOTIONS FOR JUDGMENT ON THE EVIDENCE

#### A. STANDARD OF REVIEW

We have held that when a defendant moves for judgment on the evidence at the close of the plaintiff's evidence in a jury trial, the motion should be granted only where an issue in the case or an essential element of the claim is not supported by sufficient evidence. *Patel v. Barker*, 742 N.E.2d 28, 34 (Ind.Ct.App. 2001). The same standard is used when the motion for judgment on the evidence is made at other times during the trial. *See Marquez v. Mayer*, 727 N.E.2d 768, 771–72 (Ind.Ct.App.2000)(same standard of review was used when motions were made at end of plaintiff's case and at close of all evidence). We must determine whether there is evidence of probative value supporting each element that would justify submission of the claim to the jury. *CSX Transp., Inc. v. Kirby*, 687 N.E.2d 611, 615 (Ind.Ct.App.1997). Judgment on the evidence is appropriate only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Patel*, 742 N.E.2d at 34. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

The decision to grant or deny a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Hitachi Const. Machinery Co., Ltd. v. Amax Coal Co.*, 737 N.E.2d 460, 463 (Ind.Ct.App.2000). Upon review, we use the same standard as the trial court in determining the propriety of granting or denying a motion for judgment on the evidence. *Id.* We will consider the evidence in a light most favorable to the non-moving party. *Liberty Mutual Ins. Co. v. Blakesley*, 568 N.E.2d 1052, 1057 (Ind.Ct.App.1991). When reviewing a trial court's ruling on a motion for judgment on

---

1. The trial court did grant the motion with respect to the issue of punitive damages. (R. 2288).

the evidence, we examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as qualitative perspective. *Hitachi,* 737 N.E.2d at 463. Quantitatively, evidence may fail only where there is none at all. *Id.* Qualitatively, however, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom. *Id.* The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. *Id.*

## B. NEGLIGENCE AND THE DUTY OWED TO THE JACKS

 The elements of negligence are: a duty on the part of the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; a failure of the defendant to conform its conduct to that standard; and, an injury proximately caused by the breach of duty. *See CSX,* 687 N.E.2d at 615. As we have stated previously, absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id.* Whether a defendant owes a duty to a plaintiff is a question of law. *Id.*

S.E. Johnson contends that it owed no duty to the Jacks because the State of Indiana, or INDOT through its employee, Taylor, accepted S.E. Johnson's work at the end of each work day. The Jacks argue that S.E. Johnson owed a duty to them.

## C. ACCEPTANCE OF THE WORK[2]

 The general rule is that an independent contractor is not liable for injuries to third parties after acceptance of the work by the contractor. *Hill v. Rieth–Riley Const. Co., Inc.,* 670 N.E.2d 940, 944

(Ind.Ct.App.1996). We have stated that the rationale behind this general rule is that the owner or general contractor has greater knowledge concerning the construction than the independent contractor. *Id.* Our supreme court has stated that in evaluating whether work has been accepted, the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred. *See Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 171 (Ind. 1996). Factors to be considered include whether: 1) the owner or its agent reasserted physical control over the premises or instrumentality; 2) the work was actually completed; 3) the owner expressly communicated an acceptance or release of liability; or 4) the owner's actions permit a reasonable inference that the work was accepted. *Id.* The owner can indicate an acceptance by re-occupying, leasing, selling or otherwise using the premises in a manner inconsistent with further physical control or construction activity by the contractor. *Id.*

Our review of the evidence in the record leads us to the conclusion that the trial court correctly denied S.E. Johnson's motions for judgment on the evidence. The trial court could not have determined as a matter of law that INDOT accepted S.E. Johnson's work at the end of each day, thereby extinguishing any duty that S.E. Johnson owed to the Jacks. Reasonable people could differ as to whether INDOT accepted S.E. Johnson's work based upon the factors listed above. The trial court correctly allowed the jury to determine the factual dispute regarding acceptance. *See Blake,* 674 N.E.2d at 172. (factual dispute concerning whether work can be inferred

---

2. Because we find that the trial court correctly submitted the case to the jury after determining that a factual dispute existed regarding the issue of acceptance, we do not reach the arguments relating to imminently dangerous conditions, inherently dangerous conditions, or obviously defective plans.

to be accepted must be submitted to a jury).

## II. DENIAL OF MOTION FOR SET–OFF

■■■ S.E. Johnson argues that the trial court erred by denying its motion for set-off to the extent that the Jacks were overpaid by McCoy. In a separate opinion, *R.L. McCoy, Inc. v. Michael Jack and Amy Jack*, 752 N.E.2d 67 (Ind.Ct.App. 2001), we determined that pursuant to the terms of the loan repayment agreement the Jacks are required to repay McCoy the difference between the loan payment and the amount McCoy actually owed the Jacks as a result of the jury's allocation of fault among the defendants and non-party defendant. Therefore, S.E. Johnson is not entitled to a set-off of that amount from their liability to the Jacks.

### CONCLUSION

The trial court correctly denied both of S.E. Johnson's motions for judgment on the evidence. The question of whether INDOT accepted S.E. Johnson's work at the end of each work day was a factual dispute properly presented to the jury. The issue of acceptance, question of fact, related to the issue of whether S.E. Johnson owed a duty, a question of law, to the Jacks. Because there was sufficient evidence in the case on each essential element or issue, judgment on the evidence was inappropriate. The trial court was correct in reaching that determination.

Additionally, the trial court correctly denied S.E. Johnson's motion for set-off. The Jacks were entitled to keep from the loan payment proceeds the amount the jury determined to be McCoy's liability. The Jacks will have to repay the difference to McCoy as a result of our opinion in *R.L. McCoy, Inc. v. Michael Jack and Amy Jack*, 752 N.E.2d 67 (Ind.Ct.App. 2001).

Therefore, there is no excess amount to set-off against S.E. Johnson's liability to the Jacks.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.