775 N.E.2d 1128 (2002)
The HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, Appellant-Defendant,
v.
Robert WHITE, as Personal Representative Of the Estate of Linda White, and the Estate of Linda White, and Daniel Lee Erickson, Individually and as Father and Personal Representative of the Estate of Joan Roberta Erickson, Deceased, Appellees-Plaintiffs.
No. 46A05-0106-CV-257.
Court of Appeals of Indiana.
September 25, 2002.
*1130 Gene M. Jones, Mark Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, IN, R. Dennis Withers, Robins, Kaplan, Miller & Ciresi, LLP Atlanta, GA, Attorneys for Appellant.
Edmond Foley, Foley & Small, R. Kent Rowe, III South Bend, IN, Attorneys for Appellee.

*1129 OPINION
ROBB, Judge.
Hartford Steam Boiler Inspection and Insurance Company ("Hartford") appeals from the trial court's entry of judgment on a jury verdict in favor of each of two plaintiffs in consolidated wrongful death actions, Robert White, as Personal Representative of the Estate of Linda White, and Daniel Lee Erickson, as Personal Representative of the Estate of Joan Erickson.[1] We affirm.

*1131 Issues

Hartford raises several issues for our review, which we consolidate and restate as follows:
1. Whether the trial court properly permitted a plaintiffs' witness to testify as an expert;
2. Whether the trial court properly denied Hartford's motion for judgment on the evidence;
3. Whether the trial court properly prohibited Hartford from advancing an argument regarding the plaintiffs' institution of a lawsuit against another entity in its closing argument;
4. Whether the trial court properly refused Hartford's tendered instructions; and
5. Whether the trial court properly entered judgment on the jury's verdict.

Facts and Procedural History
On March 4, 1993, a boiler at American Rubber Products Corporation exploded, and American Rubber employees Joan Erickson and Linda White were killed. Hartford, an insurance company that writes boiler and machinery casualty insurance, insured American Rubber. The subsequent investigation determined that in 1988, the boiler had been retrofitted with a replacement burner. A separate support pipe was required to adequately support the burner and relieve the stress on the attachment bolts from the weight of the burner. Sometime after the installation of the replacement burner and before the explosion, the support pipe was removed, and the weight of the burner caused it to tilt and improperly heat the elements of the boiler, ultimately resulting in the explosion.
Pursuant to Indiana law, a boiler such as the one used at American Rubber must be inspected and certified for operation each year. Ind.Code § 22-15-6-2; 680 I.A.C. 1-2-9(a)(1).[2] Hartford is designated an "inspection agency" by statute as "an insurance company engaged in insuring and inspecting regulated boilers and pressure vessels in Indiana. . . ." Ind.Code § 22-15-6-4(a)(1). Hartford employee Michael Nasatka is a "special inspector" under the administrative rules of the Indiana Boiler and Pressure Vessel Rules Board which defined a special inspector as "an Inspector other than a State Inspector who is in the regular employ of the authorized inspection agency named on his inspector's commission." 680 IAC 1-1-2(6).[3] In his capacity as a special inspector for Hartford, Nasatka inspected American Rubber's boiler on the two occasions it underwent a certificate inspection prior to the explosion. He last inspected the boiler, both internally and externally, on July 29, 1992, while it was shut down. Standard procedure was for Nasatka to send the completed inspection report to Hartford's offices in Detroit, and if there were no problems with the inspection, they would send a copy to the State, which would in turn invoice the inspected company for the inspection certificate fee. Following Nasatka's July 1992 inspection, and after American Rubber paid the required fee, the State issued an inspection certificate for the year to American Rubber.
Following the explosion in March 1993, White and Erickson each instituted actions for wrongful death against Hartford, which *1132 were consolidated for trial by jury. Hartford designated Power Plant Service, Inc., which sold and installed the new burner on the boiler, as a non-party defendant. Hartford moved for judgment on the evidence at the conclusion of the plaintiffs' evidence, which motion was denied. Ultimately, the jury returned verdicts in favor of the plaintiffs, in the amount of $1,400,000 each, apportioning 100% fault to Hartford and 0% to Power Plant. Hartford now appeals each judgment, and the two cases have been consolidated for purposes of this appeal. Additional facts will be provided as necessary.

Discussion and Decision[4]

I. Expert Testimony
Hartford contends that the trial court erred in permitting a plaintiffs' witness to testify as an expert as to the scope of an Indiana certificate inspection.

A. Standard of Review
Indiana Evidence Rule 702 governs expert testimony:
(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Evid. R. 702(a). The trial court has broad discretion in determining the admissibility of expert testimony under Rule 702, and will be reversed only for abuse of that discretion. Cook v. State, 734 N.E.2d 563, 570 (Ind.2000).

B. Weibel's Qualifications
Hartford takes exception to the qualifications of the plaintiffs' expert, Keith Weibel, to speak to the scope of an Indiana certificate inspection because he is not licensed as an inspector in Indiana and has never been present during an Indiana state certificate inspection. Hartford made a motion to exclude Weibel as a witness, which motion was denied.
The plaintiffs concede that Weibel is not an Indiana-licensed boiler inspector but contend that he nonetheless demonstrated the experience and knowledge necessary to be qualified as an expert in the area and that any deficiencies in his Indiana experience go to the weight of his testimony. We agree. Weibel testified that he had been around boilers since he was nineteen years old (Weibel was seventy-eight at the time of trial). In 1951, he took a job with Travelers Insurance Company and was licensed in the state of Wisconsin as a boiler inspector. He was subsequently licensed in Michigan, Kentucky, and Ohio and conducted state-required safety inspections in those states. He saw no difference in conducting a qualified safety inspection in any of the states he was licensed in, because the National Board of Inspection Code establishes guidelines and procedures for the safe inspection of boilers nationwide. He estimated that he performed state-required safety inspections numbering "in the thousands" during his career as a boiler inspector. Tr. at 554. He never obtained an Indiana license only because he never had a need to conduct certificate inspections in Indiana. He was, however, involved in coordinating inspection services in Indiana through his employer in 1991 and 1992 and was familiar with Indiana's rules and regulations for certificate inspections. Tr. at 566.
Based upon Weibel's foundational testimony, the trial court did not abuse its discretion in determining that he was qualified as an expert and had specialized knowledge in the field of boiler inspections *1133 that could assist the trier of fact. The lack of specific experience in conducting Indiana safety inspections goes to the weight and credibility of his testimony and was for the trier of fact to resolve. The trial court properly allowed Weibel to testify as an expert.

II. Motion for Judgment on the Evidence
Hartford contends that the trial court erred in denying its motion for judgment on the evidence. The plaintiffs counter that Hartford has waived this issue for our review.

A. Standard of Review
The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. Hitachi Const. Mach. Co., Ltd. v. AMAX Coal Co., 737 N.E.2d 460, 462 (Ind.Ct.App.2000), trans. denied. The grant or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. Id. Indiana Trial Rule 50 reads, in pertinent part, as follows:
Judgment on the EvidenceHow RaisedEffect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence . . ., the court shall withdraw such issues from the jury and enter judgment thereon....
Ind. Trial Rule 50(A). As stated in Liberty Mut. Ins. Co. v. Blakesley, 568 N.E.2d 1052 (Ind.Ct.App.1991):
On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim.
Id. at 1057. When reviewing a trial court's ruling on a motion for judgment on the evidence, we examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as qualitative perspective. Hitachi, 737 N.E.2d at 463. Quantitatively, evidence may fail only where there is none at all; however, qualitatively, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom. Id. The failure of inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. Id.

B. Hartford's Motion
At the conclusion of the plaintiffs' evidence and outside the presence of the jury, Hartford made a motion for judgment on the evidence pursuant to Trial Rule 50 in four parts. First, in response to the plaintiffs' contention that Hartford was negligent in failing to conduct an external inspection of the boiler while it was operating, Hartford claimed that the administrative regulations place the responsibility on the owner, operator, or user of the boiler to do so and there was a total absence of evidence showing that Hartford had undertaken to perform such an inspection. Second, Hartford claimed that it had immunity pursuant to Indiana Code section 34-30-17-2 as to any part of the July 1992, inspection that was outside the scope of a certificate inspection. Third, Hartford claimed that it had immunity pursuant to Indiana Code section 34-30-17-2 as to any part of the July 1992, inspection that was within the scope of a certificate inspection because it was also performed in connection with the renewal of American Rubber's casualty policy. Finally, Hartford moved for a judgment on the evidence because the defect which caused the explosion was the burner and *1134 the method of installation and/or attachment of the burner to the boiler, and the burner is beyond the scope of a certificate inspection.
Hartford's motion was denied on all grounds. Hartford then made an offer of proof on the immunity issue by offering the deposition of a Hartford engineer, which the trial court accepted. The jury was brought back and Hartford asked the court to take judicial notice of two facts related to the White claim and then rested its case.

C. Waiver
The plaintiffs contend that Hartford has waived any error in the denial of its motion for judgment on the evidence by introducing evidence after its motion was denied and failing to reassert its motion after the close of all evidence.
We have held that when a defendant moves for a judgment on the evidence and then introduces evidence on his own behalf after the motion is denied, the defendant has waived any alleged error regarding the denial of the motion. Jack Ward Chevrolet, Inc. v. Mikel, 525 N.E.2d 349, 350 (Ind.Ct.App.1988), trans. denied. See also State v. Edgman 447 N.E.2d 1091, 1100 (Ind.Ct.App.1983), trans. denied. We do not agree that Hartford's offer of proof and request that the court take judicial notice of two facts constitutes presentation of evidence on its own behalf as none of that went to the jury and, thus, do not consider these issues waived on that basis.

D. Immunity
Hartford contends that the trial court erred in denying its motion for judgment on the evidence as to immunity because it is entitled as a matter of law to statutory immunity pursuant to Indiana Code section 34-30-17-2, which provides as follows:
[A]n act or omission in the making of an inspection in connection with the issuance or renewal of a policy of casualty or fire and marine insurance does not subject an insurer or its:
(1) agents;
(2) employees; or
(3) service contractors; to civil liability for any injury, death or loss.
Initially, the plaintiffs assert that Hartford has waived the issue of statutory immunity. In particular, they claim that if Hartford was unsatisfied with the trial court's denial of its motion for judgment on the evidence, Hartford should have asked the court to submit any factual dispute on immunity to the jury. We disagree.
As we stated in Logestan v. Hartford Steam Boiler Inspection and Ins. Co., 626 N.E.2d 829, 831 (Ind.Ct.App.1993), trans. denied (citing Peavler v. Monroe County Bd. of Comm'rs, 528 N.E.2d 40, 46 (Ind.1988)), statutory immunity is a question of law for the court's determination.[5] While extended factual development may be required to decide the legal question of immunity, the essential inquiry is whether the challenged act is the type of function which the legislature intended to protect with immunity. Id. (quotations omitted). Thus, immunity under Indiana Code Section 34-30-17-2 is a legal question, and, like in Logestan, it is our role on review to decide whether, as a matter of law, Hartford was immune from liability under the statute for Nasatka's inspection of the boiler.[6]
*1135 Whether Hartford is immune from liability under Indiana Code Section 34-30-17-2 depends on whether the last inspection prior to the explosion was made "in connection with the issuance or renewal of a policy of casualty . . . insurance." Hartford asserts that Nasatka's inspection was, at least in part, in connection with the issuance or renewal of such a policy. Specifically, Hartford contends that the evidence shows that Nasatka inspected the boiler both in connection with the issuance or renewal of its policy and the issuance of a new certificate as required by the Indiana Boiler and Pressure Vessel Rules. See IND. ADMIN. CODE tit. 680, r. 2-1-2 et seq. (2001). And when an inspection is made for these dual purposes, Hartford argues that it is immune given the statute's plain meaning.
The plaintiffs respond that Hartford merely reasserts the same argument it raised and which this court rejected in Logestan, namely, that "dual purpose" inspections provide blanket immunity for an insurance company acting as an inspecting agency. Because the insurance policy in this case contains the same terms and conditions as the policy at issue in Logestan, the plaintiffs contend that Nasatka performed a certificate inspection for state certification purposes, not an insurance inspection, and that the holding in Logestan governs here. We agree with the plaintiffs.
In Logestan, the plaintiff was injured when a boiler operated by his employer exploded. The boiler had been last inspected by Robert VerSteeg, a Hartford employee and state-licensed "special inspector," approximately three months prior to the explosion. Logestan filed a personal injury lawsuit against Hartford, claiming that Hartford was responsible for the negligent inspection of the boiler. The court submitted the case to the jury with instructions on the issue of Hartford's immunity,[7] and the jury returned a verdict in favor of Hartford. Logestan appealed.
Hartford contended that it was immune from liability pursuant to former Indiana Code Section 34-30-17-02, reasoning that VerSteeg inspected the boiler both in connection with the issuance or renewal of its policy with Logestan's employer and the issuance of a new safety certificate as required by law, essentially claiming that all certificate inspections are also inspections *1136 in connection with the issuance or renewal of a policy of casualty insurance. We rejected that contention, holding that the facts of the case established that VerSteeg did not inspect the boiler in connection with the issuance or renewal of a policy of insurance. Hartford relied on VerSteeg's testimony that, in general, if he inspects a boiler and determines it to be unsafe, he recommends that the policy be cancelled or that it not be reissued until the unsafe condition is corrected. However, VerSteeg also testified that the most recent inspection had occurred on July 18, 1989. The casualty policy covering the boiler was a three-year policy that did not expire until October 10, 1991. VerSteeg testified that he did not send the inspection results to underwriters at Hartford; rather, Hartford sent the report to the State for the purpose of invoicing the company for the permit fee. The inspection report stated that the inspection was a certificate inspection for an operating permit; it did not state that it was made to renew the insurance policy. Moreover, the insurance policy expressly disclaimed that any inspection Hartford performed as an insurer is a safety inspection. Thus, the language of Hartford's own policy confirmed that a certificate inspection and an insurance inspection are separate inspections done for separate purposes. Accordingly, we held that Hartford was not entitled to immunity pursuant to Indiana Code section 34-30-17-2.
In this case, Hartford presents essentially the same argument that it did in Logestan: that the July 1992 inspection was both a state certificate inspection and an inspection in connection with the issuance or renewal of a casualty insurance policy. And because Nasatka's inspection was, in part, an insurance inspection, Hartford contends the inspection falls within the purview of Indiana Code section 34-30-17-2. But the same evidentiary deficiencies in Logestan are present here. For example, the inspection report states that the inspection is a certificate inspection, not an insurance inspection. Appellant's Appendix at 509. The insurance policy in effect on the date of the explosion had a policy period of June 1, 1992 to June 1, 1993, and therefore, the July 29, 1992, inspection was not obviously for the purposes of issuing or renewing that policy. Appellant's Appendix at 523. Moreover, the terms of the insurance policy distinguish inspections made for insurance purposes from those made for state certification as follows:
D. INSPECTIONS AND SURVEYS
We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions at any time;
3. Recommend changes.
Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections....
Appellant's Appendix at 538. Therefore, just as in Logestan, Hartford's own insurance policy "confirms that a certificate inspection and an insurance inspection are not made for the same purpose." Logestan, 626 N.E.2d at 834.
Still, Hartford directs us to testimony that the July 1992, inspection was an internal inspection of the boiler that required the boiler be shut down. The nature of the use of the boiler by American Rubber, both to run the machines and heat the building, made it difficult to shut down the boiler. American Rubber shut down production annually in the summer because it "was the only time we could shut [the boiler] off without fear of damaging the building. Our production needs were also at their lowest." Tr. at 176. American Rubber made the decision about when to *1137 shut down the boiler, and scheduled an appointment for an inspection during that time. Tr. at 176-77. Nasatka testified that the internal inspection he did of the boiler in July 1992, was done "to satisfy the state jurisdictional requirement and for insurance purposes," and that the two inspections were "[p]retty much interlocked, [they're] the same." Tr. at 1047. He also testified that he turned the paperwork in for the boiler to be certified and for it to be reinsured. Tr. at 1048.
But significantly, Hartford presented no evidence that it had referred to Nasatka's inspection report at any time between July 1992 and June 1993 to determine whether the insurance policy would be either adjusted or renewed. In particular, Lawrence Black testified that a copy of Nasatka's report would be sent to the State of Indiana for certification purposes. In addition, as a general practice, a copy of the report would be placed in the file for the underwriting department's review. Appellant's Appendix at 585. But Black had no knowledge whether the underwriting department had actually reviewed the report for insurance purposes. Id. at 586-87.
Our review of the evidence as a whole shows that Nasatka clearly performed an inspection for state certification purposes and that a copy of his report was made available to Hartford's underwriting department. That Hartford could have reviewed the inspection report for insurance purposes does not mean that the inspection was "in connection with the issuance or renewal of a policy of casualty insurance." See I.C. § 34-30-17-2. As in Logestan, both the language of Nasatka's inspection report and Hartford's own insurance policy establish that the July 1992 inspection was for state certification purposes. Thus, we hold that Hartford was not entitled to immunity for the inspection under Indiana Code Section 34-30-17-2 and, accordingly, affirm the trial court's denial of Hartford's motion for judgment on the evidence on this issue.

E. Scope of Inspection
Hartford also contends that the trial court erred in denying its motion for judgment on the evidence because the only evidence of negligence was in Hartford's failure to detect and warn of the defectively installed burner, its support, and its method of attachment to the boiler, and the burner is outside the scope of a boiler certificate inspection. The trial court denied the motion, stating that the plaintiff's expert had created a factual issue as to the scope of a certificate inspection.
The Indiana regulations define a boiler as "a closed vessel in which water is heated, steam is generated, steam is superheated, or any combination thereof, under pressure or vacuum for use externally to itself by the direct application of heat from the combustion of fuels, or from electricity or nuclear energy...." 680 I.A.C. 1-1-2(22).[8] Nasatka testified that he did not inspect the burner or its method of attachment to the boiler when he conducted the internal inspection of the boiler in July 1992, because "the burner and the attachments weren't covered under that inspection." Tr. at 1057. An American Rubber employee who was present during the boiler inspections testified that no inspector had ever inspected the burner and that he always covered the burner with a sheet of plastic when the boiler was shut down to protect it and keep it clean while the boiler was cleaned.
However, even if we assume that Hartford is correct and the burner is outside the scope of a certificate inspection, the plaintiffs submitted evidence that the effects of the improperly positioned burner could be seen on the boiler itself. A metallurgist *1138 who investigated the explosion testified that the bolts that attached the burner to the boiler showed visible evidence of corrosion from exposure to unusually high heat and had become badly elongated. Tr. at 466-77. A consulting engineer who investigated the explosion testified that the condition of the bolts could have been seen by removing the front cover plate of the boiler. Tr. at 401. The front cover itself was discolored from oxidation. Tr. at 320. Plaintiffs' expert testified that
In this particular case, [a good and reasonable inspection] would have required removal [of the front cover plate]. In order to remove the front cover plate, they would have had to remove the adaptor ring. In order to remove the adaptor ring, they would have had to take all the bolts out of [the cover plate] that was attaching that to the boiler.... In so doing, they should have and would have an opportunity to review the condition of all the connections to that boiler, which in this particular case was important because these are the conditions that led up to the occurrence. They would have had occasion to review the bolts, the connection to the boiler, the flange . . . the adaptor flange . . . and the conditions as such.
Tr. at 834-85. There was evidence that even a "good and reasonable" inspection of the boiler itself, with no regard for the burner, could have revealed unsafe conditions within the boiler. Thus, viewing the evidence most favorably to the plaintiffs as the non-moving party, the trial court did not abuse its discretion in denying Hartford's motion for judgment on the evidence.[9]

F. External Inspection
Finally, Hartford contends that the trial court erred in denying its motion for judgment on the evidence as to any failure by Hartford to perform an external inspection of the boiler while it was under pressure because Hartford was not required to do such an inspection and did not undertake to perform such an inspection.
The external inspection requirement is found at 680 I.A.C. 1-2-9:[10]
(a) All boilers subject to inspection . . . shall be inspected at the interval specified below:
(1) Power boilers . . . shall be given certificate inspections at annual intervals internally, where construction permits, and externally while not under pressure; and shall also be inspected annually externally while under pressure, if possible, approximately 6 months from the date of the certificate inspection.. . .
Hartford concedes that it did not perform an external inspection of the boiler under pressure. It entered into a stipulation at trial admitting as much. Tr. at 1271-72. Hartford also stipulated that section 1-2-9 of the Administrative Code applies to the inspections of the boiler. Tr. at 1272. Nonetheless, Hartford contends that it had no responsibility to perform an external inspection because the Administrative *1139 Code states that "there shall be a joint responsibility among owner, user and operating employees for compliance" with the boiler regulations. 680 I.A.C. 1-1-1. Hartford further contends that because it had no responsibility to perform the external inspection, it could only be liable for the failure to do so if it affirmatively undertook to perform such an inspection, and it contends that there was no evidence of such an undertaking. Therefore, Hartford contends the trial court erred in denying its motion for judgment on the evidence as to this issue.
The trial court did not abuse its discretion in denying Hartford's motion on this ground. Hartford undertook to perform a state certificate inspection of the boiler operated by American Rubber. Nasatka testified that the provision of the administrative code concerning an external inspection applies to American Rubber's boiler. Tr. at 1041. He further testified that no external inspection was done on American Rubber's boiler, although he had conducted such external inspections for other insureds while employed by Hartford. Tr. 1041-42. Thus, whether the code affirmatively places the duty on Hartford to conduct such an inspection or whether Hartford, in undertaking to perform state certificate inspections for its insureds, assumes such a responsibility, is a question for the jury. Hartford's motion for judgment on the evidence was properly denied.

III. Closing Argument
Hartford also alleges that the trial court improperly restricted the scope of its closing argument.

A. Standard of Review
The trial court is vested with broad discretion in controlling the scope of final argument. Buzzell v. State, 636 N.E.2d 158, 159 (Ind.Ct.App.1994). See also Chaiken v. Eldon Emmor & Co., Inc., 597 N.E.2d 337, 345 (Ind.Ct.App.1992), trans. denied. The trial court's actions in this regard will be reversed only for abuse of discretion. Buzzell, 636 N.E.2d at 159.

B. Scope of Closing Argument
Hartford alleges that the trial court erred in not allowing it to mention during closing argument that the plaintiffs had previously named Power Plant as a defendant in the wrongful death lawsuits. Prior to closing argument, Hartford broached the subject with the trial court:
[Defense counsel]: In chambers, [Y]our Honor ruled that we would not be allowed to argue the fact that the plaintiffs in this case filed a suit against the defendant, Power Plant, our non-party, or that they settled. And, in short, ordered that we not mention any of the claims that plaintiffs have made against Power Plant, but that we could only argue insofar as Power Plant, that they are a non-party in this case. So, thus, we don't want to start off by saying they sued them which we know they didand that they settled with themwhich we know they didand we think that there's evidence to support all of those things, to support fair inference and, of course, direct evidence of the settlement in this case....
[Court]: That is correct. The court did find that that information regarding other defendants, in particular Power Plant, was not evidence we submitted to this jury in any form whatsoever. So, the court's finding as ordered remains in full force and effect.
Tr. at 1312-13. Hartford now contends that because the plaintiffs themselves introduced an exhibit during trial which references Power Plant, the trial court abused its discretion in continuing its previous order and not allowing Hartford to argue the inferences from that exhibit. The exhibit to which Hartford refers is a letter from the plaintiffs' expert, Keith *1140 Weibel, to the plaintiffs' attorney. The only reference to Power Plant is in the re: line of the letter which shows the letter is regarding "Erickson, et al v. Power Plant Services, Inc., et al, Cause No. 46D03-9503-CT-078." Plaintiffs' Exhibit YYY. Hartford intended to argue the inference from this fleeting reference that the plaintiffs had made an admission against interest by naming Power Plant as a defendant and attributing some fault for the explosion to Power Plant. Hartford contends that the trial court's error in excluding this argument was "significant and prejudicial" as it was a factor leading to the apportionment of 100% fault to Hartford.
Although this is not, strictly speaking, a case of seeking to introduce evidence of a partial settlement, the cases dealing with such an issue are instructive. In Manns v. State Dept. of Highways, 541 N.E.2d 929 (Ind.1989), our supreme court considered the trial procedures relating to the evidentiary use of partial settlement agreements.[11] The plaintiff was injured in an automobile accident and filed suit against the driver who collided with him and also against the State Department of Highways for negligent design of the intersection where the collision occurred. Before trial, the plaintiff executed a covenant not to sue the other driver in exchange for $125,000 and dismissed him from the suit. Trial proceeded against the Department and the plaintiff called the other driver to the stand. On cross-examination, the Department, over objection, elicited testimony from the driver about the settlement. The trial court would not allow the plaintiff to introduce the covenant not to sue into evidence. The jury returned a verdict for the Department. Our supreme court held that when the affirmative defense of partial satisfaction is asserted in a personal injury case, the existence and amount of the settlement, if not disputed by the plaintiff, should generally not be presented to the jury. Id. at 934. In so holding, the court noted the danger of prejudice to both sides from revealing the settlement: the plaintiff may be prejudiced if jurors misconstrue the partial settlement as evidence of the plaintiff's belief that the settling defendant is the truly culpable or responsible party, and the defendant may be prejudiced if the jury is shown irrelevant, evocative language in a settlement document. Id. at 932-33. This approach leaves to the trial court the "ministerial task" of adjusting the amount of damages determined by the jury by the partial settlement amount. Id. at 933.
In this case, there was no actual evidence of a settlement before the jury. The reference to Power Plant as a party to the litigation was a passing reference in an exhibit and not the focal point or the reason for the introduction of the exhibit into evidence. Thus, it is debatable that the jury even noticed the reference. More importantly, to allow Hartford to comment on Power Plant's status as a prior party to the litigation for the first time during its closing argument without any substantive evidence having been produced on this issue at trial invites the kind of prejudice our supreme court sought to reduce or eliminate in Manns. The trial court did not abuse its discretion in limiting the *1141 scope of Hartford's closing argument. Finally, Hartford had named Power Plant as a non-party, and vigorously asserted that Power Plant's negligence in installing the burner was responsible for the explosion. The jury was instructed regarding Power Plant's non-party status and that any negligence on Power Plant's part could be considered in allocating fault for the explosion. Thus, even if the trial court did err in not allowing Hartford to comment on Power Plant's earlier involvement in the lawsuit during its closing argument, the error was harmless as the jury was allowed to consider Power Plant's fault through Hartford's assertion of the non-party defense.

IV. Jury Instructions
Hartford contends that the trial court erred in refusing several of its tendered jury instructions.

A. Standard of Review
The giving of jury instructions is a duty entrusted to the discretion of the trial court, and its decision will not be disturbed unless there is an abuse of discretion. Dughaish ex rel. Dughaish v. Cobb, 729 N.E.2d 159, 163 (Ind.Ct.App.2000), trans. denied. A party is generally entitled to have a tendered instruction read to the jury and we will reverse the trial court's refusal to give a tendered instruction only when: 1) the instruction is a correct statement of law; 2) it is supported by the evidence; 3) it does not repeat material adequately covered by other instructions; and 4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. Id.

B. Hartford's Instructions 2 and 3
Hartford tendered the following instructions which were refused by the trial court:
[2.] The "Indiana Rules and Regulations for Boilers and Pressure Vessels" shall be understood to set forth rules for safeguarding life, limb and property by specifying minimum standards for the construction, installation, inspection and repair of boilers and unfired pressure vessels subject to this codification. There shall be a joint responsibility among owner, user and operating employee for compliance with these rules and regulations.
The "Indiana Rules and Regulations" do not presume to limit in any way the builder's right to choose any method of design or form of construction that conforms to the standards prescribed or provided for in the Act and these "Rules and Regulations," as such standards cover certain fundamental features of construction and leave a number of details to the judgment of designers and inspectors.
[3.] The Indiana Boiler and Pressure Vessel Board Rules and Regulations provide that:
The term BOILER shall mean a closed vessel in which water is heated, steam is generated, steam is super-heated, or any combination thereof, under pressure or vacuum for use externally to itself by the direct application of heat from the combustion of fuels, or from electricity or nuclear energy.
Appellant's Appendix at 91-92.
Hartford contends that each of these instructions is a correct statement of the law, in that they come directly from the Administrative Code, that the evidence supports the giving of the instructions, and that the substance of the instructions is not covered by any other instruction. With respect to both instructions, they are nearly verbatim excerpts from the Administrative Code. Title 680 of the Administrative Code, as it was codified at the time of the explosion, was introduced into evidence by the plaintiffs. The exhibit was provided to the jury during deliberations. Hartford's request to charge the jury with selected *1142 portions of the Code places undue emphasis on these particular sections to the exclusion of the remainder of the sections which are also applicable to this case. "[A]n instruction which singles out or gives undue prominence to a particular fact or evidence is erroneous." Plan-Tec, Inc. v. Wiggins, 443 N.E.2d 1212, 1227 (Ind.Ct. App.1983).
Moreover, Hartford has not shown that its substantial rights were prejudiced by the failure to give the requested instructions. The substance of both instructions was contained in the plaintiffs' exhibit PPP which was provided to the jury. Hartford's counsel directed the jury's attention to those specific provisions during his closing argument. Thus, any error in refusing the instructions was harmless.

C. Hartford's Instruction 4
The trial court also refused Hartford's tendered instruction number 4:
The Hartford Steam Boiler Inspection and Insurance Company had a duty to discover only those things one could see, hear, or otherwise discover by an ordinary and reasonable inspection of the type required of Hartford under the same or similar circumstances.
Appellant's Appendix at 93. Hartford objected to the trial court's failure to give this instruction at trial because "[i]t's tailored to the evidence in this case and it relates to what duty Hartford Steam Boiler had directly tailored to what it should have had to do under the circumstances here...." Tr. at 1311. The plaintiffs contend that the substance of this instruction was adequately covered by other instructions, and we agree. The instruction tendered by Hartford is basically a restatement of its duty to conduct inspections with reasonable care. Several of the trial court's instructions to the jury related directly to this concept, including definitions of "reasonable care," "fault," "negligence," and an instruction that the inspector is under a duty to "use the level of care and attention that a reasonable and prudent inspector . . . would use. . . ." Tr. at 1373-83. The trial court did not err in refusing this instruction.

D. Hartford's Instruction 5
Finally, Hartford contends that the trial court erred in refusing its tendered instruction number 5, which read as follows:
Failure to make an inspection does not create liability unless the inspection would have disclosed the defects which caused the injuries to the plaintiffs.
Appellant's Appendix at 94. The instruction was based upon language in Hook v. National Brick Co., 150 F.2d 184, 187 (7th Cir.1945). The above-quoted language was part of a larger passage from the Restatement of Torts, which continues as follows:
It is sometimes true that those who use certain instrumentalities are under a duty to make reasonable inspection thereof. The duty of inspection is not, however, ordinarily an independent duty upon which liability is based, but is a duty, the performance of which is a condition precedent to a reasonable use of the instrumentality. The actor's negligence lies in his act of using the defective instrument without adequate inspection, not in his omission to perform his duty of inspection.
Id. (citing Restatement of Torts, chap. 12, para. 300). In Hook, the plaintiff's husband had been killed while loading bricks from the defendant's kiln onto his truck. The defendant's employees and the decedent all assisted in the loading operation, which consisted of lifting a box of bricks with a crane and four cables which attached via hooks into angle irons on the *1143 corners of the box. During the loading, a box of bricks stuck the decedent in the head. There was no evidence that the crane, cables or hooks were in a defective condition prior to the accident, that any of the cables or hooks broke during the operation, that the cables stretched, or that the cables or hooks were in a defective condition following the accident. The jury returned a verdict for the plaintiff, and the Seventh Circuit Court of Appeals reversed, holding that because there was no evidence of a defective condition, there was no proof that an inspection would have revealed such a condition. Id. at 188.
The passage which Hartford sought to use as an instruction to the jury was an incorrect statement of the law as it applied to this case, in that in Hook, there was no duty to inspect the machinery except as it related to the reasonableness of then using the machinery. In this case, Hartford undertook to conduct a state-required inspection of a regulated piece of machinery in order for its insured to operate the boiler in question. Based upon the distinctions between Hook and this case, the trial court did not err in refusing Hartford's tendered instruction number 5.

V. Judgment on Jury Verdict
Finally, Hartford contends that the trial court erred in entering judgment on the jury verdict allocating 100% fault to Hartford because such verdict was not supported by the evidence.
"[T]he jury, as the trier of fact, must weigh the evidence, draw any reasonable inferences, resolve conflicts in the evidence, determine the credibility of witnesses and decide in whose favor the evidence preponderates." Firstmark Standard Life Ins. Co. v. Goss, 699 N.E.2d 689, 693 (Ind.Ct.App.1998), trans. denied (quoting Ferdinand Furniture Co., Inc. v. Anderson, 399 N.E.2d 799, 805 (Ind.Ct.App.1980)). Consequently, we will overturn a jury's verdict only if there is no evidence on the elements of the plaintiff's claim which will support the verdict. Id. We view the record in a light most favorable to the verdict, do not reweigh evidence, and will not rejudge the credibility of witnesses. Planned Parenthood of Northwest Indiana, Inc. v. Vines, 543 N.E.2d 654, 658 (Ind.Ct.App.1989), trans. denied.
Viewing the record in the light most favorable to the verdict, and without reweighing evidence or rejudging credibility, we conclude that the record supports the inference that Hartford's negligent boiler inspection was 100% at fault for the explosion. It is true, as Hartford points out, that the evidence demonstrated that Power Plant installed the burner and that improper burner tilt was responsible for superheating the boiler and causing the explosion. However, there was also evidence that Power Plant installed the burner with a supporting leg that would have prevented the tilt, that an unidentified person subsequently removed the support leg, and that there were both external and internal manifestations of the dangerous condition being caused by the burner that a reasonable external inspection of the burner would have disclosed. Under this evidence, it was reasonable for the jury to determine that the cause of the explosion was not Power Plant's installation of the burner, but Hartford's subsequent inspection and/or failure to inspect which failed to disclose the dangerous condition being created in the boiler by the removal of the burner support leg provided by Power Plant. We cannot say that there was a complete absence of evidence to support the elements of the plaintiffs' claims, and therefore, we hold that the trial court correctly entered judgment on the jury verdict allocating 100% fault to Hartford.

*1144 Conclusion

The trial court did not err in permitting the plaintiffs' witness to testify as an expert on boiler inspections. The trial court properly denied Hartford's motion for judgment on the evidence on all grounds. The trial court did not err in limiting the scope of Hartford's closing argument or by refusing its tendered instructions. Finally, there was sufficient evidence to support the jury's verdict and the trial court properly entered judgment thereon. The judgment of the trial court is, in all respects, affirmed.
Affirmed.
BAILEY, J., and NAJAM, J., concur.
NOTES
[1] Hartford's appeals of the respective causes of action were consolidated by order of this court on November 6, 2001.
[2] Plaintiff's Exhibit PPP was a copy of the Administrative Code sections applicable to this action as they were codified at the time of the occurrence. References herein are to that version of the Administrative Code. This requirement is now found at 680 I.A.C. 2-3-9(a)(1).
[3] Now 680 I.A.C. 2-4-46.
[4] Hartford's motion for oral argument is hereby denied.
[5] We note that Peavler was concerned with governmental immunity under the Indiana Tort Claims Act. See Ind.Code § 34-13-3-3. In Logestan, this court extended the Peavler analysis to a non-governmental statutory immunity. We see no reason now to restrict the focus to governmental immunity and, accordingly, we follow the Peavler analysis herein.
[6] Hartford first raised statutory immunity as an affirmative defense in its Answer. Hartford then filed a motion in limine prior to trial in which it again raised the immunity issue. The trial court denied the motion in limine and stated, "[t]he immunity . . . waits until we come to court and hear the evidence on that." Transcript at 63. At the close of the plaintiff's evidence at trial, Hartford raised the immunity issue in its motion for judgment on the evidence, and the court denied its motion. In doing so, the trial court effectively determined as a matter of law that Hartford was not entitled to statutory immunity. And the record shows that after denying Hartford's motion for judgment on the evidence, the trial court admitted in evidence a deposition solely for the court's consideration on the issue of immunity. The court acknowledged that the deposition would not be read to the jury and that the "evidence is being submitted to support [the immunity] argument. It's a legal argument for appeal is what it comes down to." Transcript at 1298. Thus, the trial court correctly recognized that Hartford's claim of statutory immunity is purely a question of law.
[7] As we have stated, immunity is a question of law and, thus, we held that the trial court erred when it submitted the issue of immunity to the jury. 626 N.E.2d at 834. Moreover, in Logestan, Hartford had claimed both governmental immunity pursuant to the Tort Claims Act, Ind.Code § 34-4-16.5-3(11), and immunity under Indiana Code section 34-30-17-2 (which was then codified, in substantially similar language, at Indiana Code section 34-4-12.7-2). With respect to the governmental immunity, we held that special inspectors are not state employees and that Hartford is not a governmental entity or instrumentality entitled to governmental immunity. 626 N.E.2d at 832. Hartford has raised no issue of governmental immunity in this case.
[8] Now found at 680 I.A.C. 2-4-5.
[9] Hartford also contends that even if the inspection was performed negligently, it is still entitled to a judgment on the evidence because there was no evidence that the boiler failure was proximately caused by the negligent inspection. "[P]roximate cause is generally an issue for the trier of fact and may be decided as a matter of law only when the facts are undisputed and lead to but a single inference. . . ." Palmer & Sons Paving, Inc. v. Northern Indiana Pub. Serv. Co., 758 N.E.2d 550, 557 (Ind.Ct.App.2001) (quoting Thiele v. Faygo Beverage, Inc., 489 N.E.2d 562, 576 (Ind.Ct.App.1986), trans. denied). Given the evidence as stated, there was a factual dispute that prevented a judgment on the evidence.
[10] Now codified at 680 I.A.C. 2-3-9(a)(1).
[11] Manns was decided without consideration for the Comparative Fault Act, as the accident occurred prior to the enactment of the Comparative Fault Act. The issue of whether credits or set-offs survive the Comparative Fault Act where a settling co-defendant is not named at trial as a non-party was considered by our supreme court in Mendenhall v. Skinner and Broadbent Co., Inc., 728 N.E.2d 140 (Ind.2000). The court determined that in such circumstances, a credit is not available. Id. at 145. The issue of whether evidence of a partial settlement may be presented to the jury in those circumstances was not addressed.