Virgie SUELL, Appellant–Plaintiff,

v.

Kenneth S. DEWEES, Appellee–Defendant.

No. 10A01–0204–CV–122.

Court of Appeals of Indiana.

Dec. 31, 2002.

Karl N. Truman, Jeffersonville, IN, Attorney for Appellant.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### *STATEMENT OF THE CASE*

Appellant–Plaintiff, Virgie Suell (Suell), appeals the trial court's decision allowing the medical expert retained by Appellee–Defendant, Kenneth S. Dewees (Dewees), to testify regarding the speed of the parties' automobiles at the time of impact.

We affirm.

### *ISSUE*

Suell raises one issue for our review, which we restate as follows: whether the trial court erred by allowing Dewees' medical expert to testify regarding his opinion as to the speed of the parties' vehicles at the time of impact.

### *FACTS AND PROCEDURAL HISTORY*

The facts most favorable to the verdict reveal that on March 10, 1999, Suell was driving her daughter's Eagle Talon automobile through a parking lot when she was struck by Dewees' Toyota Land Cruiser as he backed it out of a parking space. Suell claimed various injuries as a result of the accident, including trauma to her neck and spine, and subsequently filed suit on March 13, 2000.

Dewees hired orthopedic surgeon, James Harkess, M.D. (Harkess), to conduct an Ind. Trial Rule 35 medical examination of Suell. Harkess examined Suell on July 9, 2001, and issued a nine-page written report containing his conclusion that "[o]ne would not expect serious injuries to result from a low speed collision, such as the T-bone that [Suell] has described, since it is unlikely that a car just starting to back up would have obtained much of a velocity, and she was only traveling at 10 miles per hour." (Appellee's Appendix p. 111). Harkess stated that he based his conclusion on the information that Suell provided to him at the time of her examination.

On January 4, 2002, Suell filed a motion in limine, seeking to "preclude Defendant's Medical Expert, Dr. James Harkess from testifying as to his opinions as to the impact between the two vehicles." (Appellant's App. p. 4). The trial court denied the motion on January 24, 2002. When the jury trial began on January 29, 2002, Suell renewed her motion in limine. During Harkess' direct testimony, Suell objected and requested a sidebar. In chambers, Suell asked the following questions preliminary to her objection:

SUELL: You did not perform any type of accident reconstruction here did you?

HARKESS: No but I got a history which was helpful.

SUELL: And you['re] not qualified as a[n] accident reconstruction[i]st are you?

HARKESS: I never plan[ned] to be but I know about what happens to people when [sic] cars when the[y're] in accidents.

SUELL: Alright, please let me continue. And you're not qualified as an engineer are you?

HARKESS: As a what?

SUELL: As an engineer?

HARKESS: No.

SUELL: Did you perform any calculations of Delta [V] the change in velocity of the vehicles?

HARKESS: No because I could not.

SUELL: Did you measure any crush depth of the vehicles?

HARKESS: No.

SUELL: Did you determ ... make any determinations of speed of the vehicles?

HARKESS: No but it's quit[e] evident that when sombod[y's] backing a car out of a ... parking space [they're] not traveling fast.

SUELL: Okay, did you make any calculations of the speed of, of the uh [L]and [C]ruiser?

HARKESS: You mean the SUV's [sic] that struck her?

SUELL: Yes.

HARKESS: No but I know that it takes sometime for a car to go from a ... stand still to any speed at all the amount of distance that he traveled backing out from a parking spot and the fact that people don't ... put their accelerates [sic] on the floor when they back out would tell me that this was low velocity.

SUELL: Alright, Doctor do you know the distance that he traveled before the impact?

HARKESS: No but it obviously wasn't very much [as] he's barking [sic] out of a parking spot and she's passing by and he struck her.

SUELL: You don't, Doctor you don't have any facts to base that opinion on do you?

HARKESS: Only the facts that most people who drive cars already know.

SUELL: You[r] personal opinion and speculation isn't it?

HARKESS: No I'd think that somebody backing a car doesn't do it very fast the lady herself was traveling at ten miles per hour and the type of injury would make her car deviate to the side uh the amount of acceleration that's produced and the target car the car [sic] that struck depends on the momentum of the car that strikes her and momentum depends on the size of the car and the speed of the car and as I've said this car couldn't have been traveling very fast.

SUELL: Okay and the ... you ... do you know the weight of either of the cars?

HARKESS: No I don't but it was obvious that the car that was struck it [sic] was larger than hers.

SUELL: Doctor, Your Honor, this is not orthopedic surgery this, this is not orthopedic surgery [sic] he's trying to make a judgement [sic] on velocity when he doesn't know the weight, doesn't [know] the speed, doesn't know the distance traveled, doesn't know the crush depth, he know[s] nothing except [his] personal opinion the phrase [is ipse dixit], it's, it's so because I say it's so there's no evidentiary foundation [that he] based his testimony on.

. . .

DEWEES: Dr. Harkess in your opinion on page eight you said one would not expect serious injuries to result from a low speed collision, such as the T-bone that she has described since it is unlikely that a car just starting to back up would've obtained much of a velocity and

she was only traveling at ten miles per hour?

HARKESS: That is correct.

DEWEES: Um and do you intend to go beyond that opinion?

HARKESS: No.

DEWEES: You're just making the point that based on what [ ] Suell told you it was in your common sense estimation a low speed impact?

HARKESS: Absolutely.

(Appellee's App. pp. 55–58).

At the conclusion of Suell's examination of Harkess, the trial court stated: "[w]hat we are going to do here is basically say that the opinion is based upon the testimony of the plaintiff in this case to the doctor and in the interview uh based upon what she said he can draw a conclusion." (Appellee's App. p. 59). Harkess' direct testimony continued with the following exchange:

DEWEES: Did um Ms. Suell['s] description of the accident factor into your opinion in the case?

HARKESS: Yes why she said she was traveling at ten mile[s] per hour which really isn't a very fast [speed] and I think most of us know that when people back out of a parking spot they don't put their foot to the floor that the[y] ease out rather than come out at high speed and if you're backing out of a parking spot into the lane where there's traffic then you have a very small, relatively small uh distance to travel so that going from a complete stop to your maxima [sic] speed takes sometime so I think it highly unlikely that the accident was a high speed, high velocity accident.

. . .

DEWEES: Whatever discrepancies you may have found um in your exam of Ms. Suell when you examined the lower extremities you think that problem was caused by the March 10, 1999 car accident?

HARKESS: No I don't believe that her disk [sic] herniation was occurred [sic] then she got her acute [sic] symptoms quit[e] along [sic] time afterwards now I think she's got a very good result from her surgery and even she says so.

(Appellee's App. pp. 61–62).

On cross-examination, Suell elicited the following admissions from Harkess:

SUELL: You characterized the impact as low speed now Doctor you['re] not an engineering expert are you?

HARKESS: No.

SUELL: You['re] not a[n] accident reconstructionist are you?

HARKESS: No.

SUELL: You don't have . . . uh excuse me . . . wasn't it true that Virgie told you that the defendant backed out at high speed?

HARKESS: Yes, but she just said . . . told me also that she didn't see him until the crash so I don't know, I don't know how she would estimate his speed but at any rate I think everybody here knows you don't back out of parking space at high speed.

SUELL: Well now wait a minute she was there and saw it, you weren't how is it you can make a conclusion about speed and she can't?

HARKESS: I didn't say she couldn't make it [sic] a conclusion, I made my conclusion that nobody backs up their car out of a parking spot at high speed.

. . .

SUELL: Isn't it true you [do] not know how fast the defendant's [L]and [C]ruiser was traveling at the time of impact?

HARKESS: I don't know the precise speed but I'm quit[e] sure that it wasn't [at a] high speed.

SUELL: Isn't it true that you don't know if the [L]and [C]ruiser was accelerating or decelerating or stopping at that point?

HARKESS: It wouldn't be decelerating I don't believe but obviously it wasn't accelerating very much when people back out of parking spots they don't travel at a high speed.

. . .

SUELL: Alright, maybe you didn't understand my question, isn't it true you don't know if he was accelerating at the point of impact?

HARKESS: I have no means of knowing that.

. . .

SUELL: And it isn't [sic] true you don't know the extent of the damage to either car do you?

HARKESS: No.

SUELL: You didn't measure any crushed depths or anything like that?

HARKESS: I examine patients sir not cars.

. . .

SUELL: And you didn't make any calculations of change of velocity here did you?

HARKESS: How could I, I didn't know. [sic]

. . .

SUELL: Well Doctor if, if the evidence were to show that it was much more of a severe collision than what you characterized as would that have any influence on your opinion?

HARKESS: Not really because what I've testified to uh as to her injuries would still be to remain but I really don't believe that the collision was a high speed collision with a great deal of momentum passing from the bullet car to the target car that's all I said.

SUELL: I understand what your [sic] saying Doctor but since you [sic] saying

that would not have any influence [on] your opinion than I guess you don't care how severe or minor the impact is in this case?

HARKESS: It's not a question of caring uh I testified that I thought that it was a low velocity collision and it was unlikely that the [sic] she [sic] didn't get any fractures or any of the things that people get in a high velocity uh motor vehicle accidents [sic].

(Appellee's App. pp. 75–79).

On January 31, 2002, the jury returned a verdict for Dewees. Suell now appeals. Additional facts will be supplied as needed.

### DISCUSSION AND DECISION

Suell contends that the trial court abused its discretion when it denied her motion in limine. Specifically, Suell argues that Harkess was not qualified to give opinion testimony as to the speed of the vehicles because that subject was outside Harkess' area of expertise. Decisions as to the admissibility of expert testimony fall within the broad discretion of the trial court. *Hartford Steam Boiler Inspection and Ins. Co. v. White*, 775 N.E.2d 1128, 1132 (Ind.Ct.App.2002). Consequently, we will only reverse a trial court's determination upon a showing of an abuse of discretion. *Id.*

Indiana Rule of Evidence 702(b) states, in pertinent part, that:

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Under Rule 702, the trial courts are "gatekeepers of evidence, to ensure that expert testimony is relevant and rests upon a reliable foundation." *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 366 (Ind. Ct.App.2002). Furthermore, Ind. Rule of Evidence 703 states, in pertinent part, that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.

■■■■ The focus here is not on Harkess' qualifications as an expert, nor his testimony regarding his medical conclusions. Rather, the issue is whether it was error for a medical expert to give opinion testimony as to a nonmedical issue, i.e. the speed of the parties' vehicles. While we conclude that the admission of such testimony constitutes error, we find the error to have been rendered harmless by the balance of Harkess' extensive testimony regarding the nature of Suell's physical infirmities, as well as by Suell's vigorous cross-examination.[1]

Implicit in much of Harkess' testimony was the fact that he obviously did not believe that Suell's physical ailments were consistent with injuries sustained in an automobile accident occurring at any speed. For example, Harkess stated that Suell's original diagnosis of a torn meniscus was "very common in sporting injuries" and only occurred when "the bod[y's] weight is on that knee and ... the knee is forced in rotation of the direction that it doesn't want to go." (Appellee's App. p. 25). Consequently, Harkess explained, "you can't get that in an automobile accident first of all because your weight isn't on your knee and you can't get a twisting injury of the knee with the body weight on it while your [sic] sitting in a seat." *Id.* In other words, Harkess was explaining that various types of knee injuries can occur in automobile accidents; however, a torn meniscus is not one such injury. (While Suell was initially diagnosed with having a torn meniscus, she was subsequently examined and it was determined that she did not have any tears in her knee.)

Also, x-rays taken after the accident in response to Suell's complaints of neck and back pain revealed "spurring off the vertebra" which Harkess testified "shows this is a [sic] old preexisting uh condition in the neck." (Appellee's App. p. 14). In addition, Harkess testified:

> She certainly had well marked degenerated changes in her neck which antedated her accident and I think if we [sic] very likely that she would have problems with this in the future that would neccate [sic] this surgery so far as her low back is concerned I found no evidence that this problem in her low back was produced by the car accident.

(Appellee's App. p. 54). Based on the above, it is apparent that in Harkess' expert medical opinion, Suell's injuries were not linked to her automobile accident, regardless of the speed of the vehicles at the time of impact. Consequently, allowing Harkess to testify as to his opinion regarding the speed of the vehicles at the time of impact was harmless error.

Furthermore, Harkess' opinion as to the speed of the vehicles was not without foundation. In his Trial Rule 35 interview with Suell, Suell told Harkess that she was traveling at ten miles per hour at the time of the impact. This information, combined with the many years that Harkess practiced orthopedic surgery, and his half-century of medical experience in dealing with similar injuries, provided a foundation for Harkess to draw the conclusion he did with regard to the speed of the vehicles. Moreover, in addition to his years of practice, Harkess has authored several textbook chapters on the mechanics of injuries. As to the content of those tracts, Harkess stated:

> Well I went into the mechanisms by which bones fracture or joints are in-

---

1. In reaching our conclusion, we are limited to an analysis of Dr. Harkess' testimony only, as that is the only portion of the record that either party has provided to us.

jured what sort of forces will do that I also talked about the bio mechanics of internal fixations the strength of metals of variety of things that had to do with the treatment of fractures and the understanding of how fractures were pre deuced [sic].

(Appellee's App. p. 8). Thus, despite the fact that Harkess clearly does not qualify as an accident or reconstruction expert, he nonetheless has sufficient experience and knowledge of accidental injuries from which he could form an opinion as to the likely speed of the vehicles at the time of impact. Ind. Rule of Evidence 702(b).

■ Our supreme court addressed this issue of an expert's testimony straying beyond the strict limits of his specialty in *Sears v. Manuilov*, 742 N.E.2d 453, 461 (Ind.2001):

> If applied to separately evaluate every subsidiary point made during the testimony of a qualified expert regarding matters based on reliable science, Rule 702(b) can become excessively burdensome to the fair and efficient administration of justice. It directs the trial court to consider the underlying reliability of the general principles involved in the subject matter of the testimony, but it does not require the trial court to reevaluate and micromanage each subsidiary element of an expert's testimony within the subject. Once the trial court is satisfied that the expert's general methodology is based on reliable scientific principles, then the accuracy, consistency, and credibility of the expert's opinions may properly be left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact.

In *Manuilov*, our supreme court held that the trial court did not abuse its discretion by allowing a psychiatrist to testify regarding the plaintiff's organic and physical brain damage, despite defendant's objection that subtle brain damage was outside a psychiatrist's area of expertise, because "[t]hese are matters of weight and credibility and were vigorously raised for the jury's consideration[.]" *Id.* Here, Suell likewise subjected Harkess' opinion as to the approximate speed of Dewees' vehicle to vigorous examination. Suell was allowed the benefit of the aforementioned opportunities in order to discredit the testimony of Harkess, including the opportunity to present expert testimony to the contrary.[2] Harkess admitted during cross examination that he was not an expert in accident analysis or accident reconstruction, thereby permitting the jury to separate that portion of Harkess' testimony from the medical testimony on which he was an expert, freeing them to evaluate its credibility within the context of their own experiences. Therefore, the allowance of Harkess' testimony constituted only harmless error and did not rise above the lofty abuse of discretion standard.

## CONCLUSION

For all of the foregoing reasons, we conclude that the trial court did not abuse its discretion in permitting Dewees' medical expert to give his opinion testimony regarding the speed of the vehicles at the time of impact.

Affirmed.

MATTINGLY–MAY, J., and ROBB, J., concur.

---

2. Again we note that neither party has provided us with a sufficient amount of the record to determine if Suell presented evidence to the contrary, called her own experts to testify, or even testified herself as to the speed of the vehicles at the time of impact.